SCOTT A. KRONLAND (SBN 171693)
STACEY M. LEYTON (SBN 203827)
REBECCA C. LEE (SBN 305119)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
Email: skronland@altber.com
          sleyton@altber.com
          rlee@altber.com

*Attorneys for Defendant United Domestic
Workers of America, AFSCME Local 3930*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA QUIRARTE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED DOMESTIC WORKERS<br>AFSCME LOCAL 3930, *et al.*,<br><br>Defendants. | CASE NO. 3:19-cv-01287-CAB-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNITED DOMESTIC WORKERS AFSCME LOCAL 3930'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date:  January 17, 2019<br>Location:      Courtroom 4C<br><br>Judge: The Hon. Cathy Ann Bencivengo |

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES ........................................................................iii

3  INTRODUCTION ............................................................................... 1

4  BACKGROUND .................................................................................. 3

5  LEGAL STANDARD ......................................................................... 4

6  ARGUMENT ....................................................................................... 5

7  I.   Plaintiffs' claims for prospective relief do not present a live
8       controversy ......................................................................... 5

9  II.  Plaintiffs' First Amendment/§1983 claim fails on the merits.................... 7

10     A.  The terms of Plaintiffs' voluntary dues deduction agreements do
11         not constitute state action as required to state §1983 claims................ 7

12     B.  The enforcement of Plaintiffs' voluntary dues authorization
13         agreements does not violate their First Amendment rights................ 9

14         1.  Plaintiffs expressly authorized the payments they now
15             challenge .................................................................. 9

16         2.  Plaintiffs' voluntary membership agreements are binding
17             contracts ................................................................. 10

18         3.  The First Amendment does not provide Plaintiffs with a right
19             to breach their voluntary contractual obligations ........................... 12

20         4.  *Janus* does not change the governing legal analysis here by
21             imposing a new heightened waiver requirement............................ 13

22         5.  Even if a "waiver" analysis were applicable here, Plaintiffs
23             waived any right not to pay dues to UDW by clearly and
24             affirmatively agreeing to pay that money....................................... 16

25  III.  Plaintiffs' Medicaid Act claim should be dismissed because the
26        relevant Medicaid Act provision does not create rights enforceable
27        under §1983 ........................................................................ 18

28        A.  Statutory background ........................................................... 18

              1.  The Medicaid Act and its "anti-reassignment" provision ............. 18

i

1

2.  Medicaid's home care program and union dues deductions..........21

3.  2014 regulation and 2018 withdrawal ...........................................21

B.   The Medicaid Act anti-reassignment provision does not create an individual "right" enforceable under 42 U.S.C. §1983 ......................22

CONCLUSION.......................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS;
NO. 3:19-cv-01287-CAB-KSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Board of Education*,
    431 U.S. 209 (1977) ................................................................. 14

*AFSCME v. Woodward*,
    406 F.2d 137 (8th Cir. 1969) ..................................................... 15

*AHS Tulsa Reg'l Med. Ctr. v. Fogarty*,
    No. 07-CV-338-CVE-SAJ, 2007 WL 3046441 (N.D. Okla. Oct. 16,
    2007) ........................................................................................ 24

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
    126 F.3d 1118 (9th Cir. 1997) ..................................................... 6

*Anderson v. SEIU Local 503*,
    400 F.Supp.3d 1113 (D. Or. 2019) ................................... 2, 3, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................... 5

*Augustine v. United States*,
    704 F.2d 1074 (1983) ................................................................... 5

*Babb v. Cal. Teachers Ass'n*,
    378 F. Supp. 3d 857, 886 (C.D. Cal. 2019) ........................*passim*

*Bain v. California Teachers Ass'n*,
    156 F.Supp.3d 1142 (C.D. Cal. 2015) .......................................... 8

*Belgau v. Inslee* ("*Belgau I*"),
    2018 WL 4931602 (W.D. Wash. Oct. 11, 2018) ..................*passim*

*Belgau v. Inslee* ("*Belgau II*"),
    359 F.Supp.3d 1000 (W.D. Wash. 2019) .............................*passim*

*Bermudez v. SEIU Local 521*,
    2019 WL 1615414 (N.D. Cal. Apr. 16, 2019) ....................2, 11, 13

*Bernor v. Takeda Pharm. Am., Inc.*,
    2018 WL 588563 (C.D. Cal. Jan. 25, 2018) ................................. 7

*Blessing v. Freestone*,
  520 U.S. 329 (1997) ....................................................................... 18, 22

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ................................................................................. 8

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000) .............................................................................. 15

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ................................................................ 5

*California v. Azar*,
  No. 19-cv-02552 (N.D. Cal.).................................................................. 22

*Chapman v. Houston Welfare Rts. Org.*,
  441 U.S. 600 (1979) .............................................................................. 24

*Charter Commc'ns, Inc. v. Cty. of Santa Cruz*,
  304 F.3d 927 (9th Cir. 2002).................................................................. 17

*Chevron, U.S.A. Inc. v. NRDC, Inc.*,
  467 U.S. 837 (1984) .............................................................................. 24

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983) .................................................................................. 6

*Cohen v. Cowles Media Co.*,
  501 U.S. 663 (1991) .............................................................. 2, 12, 13, 17

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999) .............................................................................. 14

*Cooley v. Cal. Statewide Law Enf't Ass'n* ("*Cooley II*"),
  385 F.Supp.3d 1077 (E.D. Cal. 2019) ..................................................... 2

*Cooley v. Cal. Statewide Law Enforcement Ass'n* ("*Cooley I*"),
  2019 WL 331170 (E.D. Cal. Jan. 25, 2019)..................................... *passim*

*Crockett v. NEA Alaska*,
  367 F.Supp.3d 996 (D. Alaska 2019)......................................... 2, 11, 13

*Curtis Publ'g Co. v. Butts*,
  388 U.S. 130 (1967) .............................................................................. 14

iv

*Davis v. FEC*,
    554 U.S. 724 (2008) ................................................................. 5

*DFS Secured Healthcare Receivables Tr. v. Caregivers Great Lakes, Inc.*,
    384 F.3d 338 (7th Cir. 2004) ................................................. 19

*Emp'rs-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital Advisers*,
    498 F.3d 920 (9th Cir. 2007) ................................................. 6

*Fisk v. Inslee* ("*Fisk I*"),
    2017 WL 4619223 (W.D. Wash. Oct. 16, 2017) ................... 11, 12, 13

*Fisk v. Inslee* ("*Fisk II*"),
    759 F.App'x 632 (9th Cir. 2019) ...................................... 11, 12, 13

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) ..................................................... 22, 23, 24, 25

*Hallinan v. Fraternal Order of Police, Lodge No. 7*,
    570 F.3d 811 (7th Cir. 2009) ................................................. 9

*Harris v. Quinn*,
    573 U.S. 616 (2014) ......................................................... 3, 13

*Int'l Ass'n of Machinists Dist. Ten v. Allen*,
    904 F.3d 490 (7th Cir. 2018) ............................................... 12

*Janus v. AFSCME, Council 31*,
    138 S.Ct 2448 (2018) ................................................... 13, 14, 16

*Johnson v. Zerbst*,
    304 U.S. 458 (1938) ............................................................ 14

*Kidwell v. Transp. Commc'ns Int'l Union*,
    946 F.2d 283 (4th Cir. 1991) ............................................... 15

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ........................................... 3, 10

*Knox v. SEIU, Local 1000*,
    567 U.S. 298 (2012) ............................................................ 14

*Kremens v. Bartley*,
    431 U.S. 119 (1977) ................................................................................ 6

*Leonard v. Clark*,
    12 F.3d 885 (9th Cir. 1994) ........................................................... 17, 18

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 992 (1982) ................................................................................ 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ 7

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S.Ct. 1921 (2019)............................................................................. 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................... 5

*In re Missionary Baptist Foundation of America, Inc.*,
    796 F.2d 752 (5th Cir. 1986) ............................................................... 20

*Molina v. Pa. Soc. Serv. Union*,
    392 F.Supp.3d 469 (M.D. Pa. 2019)................................................ 1, 6

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
    685 F.App'x 623 (9th Cir. 2017), *cert. denied*, 138 S.Ct. 1438 (2018)............... 17

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ............................................................................. 14

*NLRB v. Granite State Joint Bd., Textile Workers Union, Local 1029*,
    409 U.S. 213 (1972) ............................................................................. 12

*NLRB v. U.S. Postal Serv.*,
    827 F.2d 548 (9th Cir. 1987) ............................................................... 11

*NLRB v. U.S. Postal Serv.*,
    833 F.2d 1195 (6th Cir. 1987) ............................................................. 12

*O'Callaghan v. Regents of the Univ. of Cal.*,
    2019 WL 2635585 (C.D. Cal. June 10, 2019)................................*passim*

*Ohno v. Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ............................................................ 7, 9

vi

*Oliver v. SEIU Local 668*,
  __ F.Supp.3d. __, 2019 WL 5964778 (Nov. 13, 2019)..................................*passim*

*Perricone v. Perricone*,
  972 A.2d 666 (Conn. 2009)............................................................ 16, 17

*Public Utilities Commission of D.C. v. Pollak*,
  343 U.S. 451 (1952) .................................................................. 9

*Roberts v. AT&T Mobility LLC*,
  877 F.3d 833 (9th Cir. 2017) ........................................................ 9

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) .................................................................. 15

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) ........................................................ 5

*Sanchez v. Johnson*,
  416 F.3d 1051 (9th Cir. 2005) ................................................... 23, 25

*Seager v. United Teachers L.A.*,
  2019 WL 3822001 (C.D. Cal. Aug. 14, 2019) ....................................*passim*

*Smith v. Bieker* ("*Smith II*"),
  2019 WL 2476679 (N.D. Cal. June 13, 2019) ...................................*passim*

*Smith v. Superior Court* ("*Smith I*"),
  2018 WL 6072806 (N.D. Cal. Nov. 16, 2018)....................................*passim*

*Smith v. Teamsters Local 2010* ("*Teamsters*"),
  No. 19-cv-00771-PA-FFMx, 2019 WL 6647935 (C.D. Cal. Dec. 3,
  2019) ..................................................................................*passim*

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .................................................................. 6

*Suter v. Artist M.*,
  503 U.S. 347 (1992) .................................................................. 25

*Transitional Servs. of N.Y. for Long Island, Inc. v. N.Y. State Office of
  Mental Health*,
  91 F.Supp.3d 438 (E.D.N.Y. 2015)............................................... 24

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .................................................................. 5

*United Steelworkers of Am. Local 4671*,
    302 NLRB 367 (1991) ....................................................................... 12

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) ............................................................. 4

**Statutes**

42 U.S.C. §1396a ....................................................................... 18, 19, 23

42 U.S.C. §1396c .............................................................................. 18

42 U.S.C. §1983 ..........................................................................*passim*

Cal. Gov't Code §1152 ...................................................................... 4

Cal. Gov't Code §1153 ...................................................................... 4

Cal. Gov't Code §3502 ...................................................................... 3

Cal. Welf. & Inst. Code §12300 ...................................................... 3

Cal. Welf. & Inst. Code §12301.6 ............................................... 4, 21

**Rules & Regulations**

42 C.F.R. Part 430 ........................................................................... 18

42 C.F.R. §430.35 ........................................................................... 18

42 C.F.R. §447.10 ........................................................................... 21

79 Fed. Reg. 2948 (Jan. 16, 2014) ............................................... 21

Fed. R. Civ. P. 12 ............................................................................. 4

**Other Authorities**

H.R. Rep. No. 92-231, 92d Cong., 2d Sess. (1972), 1972 U.S.C.C.A.N.
    4989 ............................................................................... 19, 20

H.R. Rep. No. 95-393, 95th Cong., 1st Sess. 48 (1977), 1977
    U.S.C.C.A.N. 3039 ................................................................ 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

S. Rep. No. 92-1230, 92d Cong., 2d Sess. 205 (1972)..........................................19, 20

S. Rep. No. 95-453, 95th Cong., 1st Sess. 48 (1977), 1977
    U.S.C.C.A.N. 3039 ........................................................................................20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs voluntarily signed union membership agreements with Defendant United Domestic Workers of America, AFSCME Local 3930 ("UDW" or "Union"), in which they expressly authorized the deduction of union dues from their pay for a minimum one-year period.  In exchange, they received the rights and benefits of union membership.  Plaintiffs now allege that the enforcement of their voluntary membership and dues deduction agreements violates their First Amendment rights as well as the Medicaid Act.  Plaintiffs have no viable 42 U.S.C. §1983 claims either under the First Amendment or the Medicaid Act, so the Court should grant the Union's Rule 12(c) motion for judgment on the pleadings in its entirety.

Initially, Plaintiffs' §1983 claims for *prospective* relief do not present an Article III case or controversy.  Plaintiffs' requests to resign their union membership and terminate their dues deductions have already been processed, and there is no realistic possibility that union dues will be deducted from their paychecks again in the future.[1]  Plaintiffs "'would have to rejoin [the] union for [their] claim to be live, which, given [their] representations in this lawsuit, seems a remote possibility.'" *Seager v. United Teachers L.A.*, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019) (quotation omitted).  Accordingly, as every court to consider this issue has concluded, Plaintiffs' claims for prospective relief are moot.  *See Oliver v. SEIU Local 668*, __ F.Supp.3d. __, 2019 WL 5964778 at *7 (E.D. Pa. Nov. 12, 2019); *Babb v. Cal. Teachers Ass'n*, 378 F.Supp.3d 857,  886 (C.D. Cal. 2019); *Molina v. Pa. Soc. Serv. Union*, 392 F.Supp.3d 469, 481 (M.D. Pa. 2019); *O'Callaghan v. Regents of the Univ. of Cal.*, 2019 WL 2635585, at *4 (C.D. Cal. June 10, 2019); *Smith v. Bieker* ("*Smith II*"), 2019 WL 2476679, at *1 (N.D. Cal. June 13, 2019).

Plaintiffs' First Amendment/§1983 claim for retrospective relief regarding dues deductions fails on the merits.  Initially, Plaintiffs' voluntary union membership

---

[1] Plaintiff Quirarte has never paid membership dues, so she lacks standing to sue for damages as well.

1  agreements with the Union—a private entity, not a state actor—do not constitute

2  state action.  *See Smith v. Teamsters Local 2010* ("*Teamsters*"), No. 19-cv-00771-

3  PA-FFMx, 2019 WL 6647935, at *5-8 (C.D. Cal. Dec. 3, 2019); *Oliver*, 2019 WL

4  5964778, at *4-6; *Belgau v. Inslee* ("*Belgau II*"), 359 F.Supp.3d 1000, 1012-15

5  (W.D. Wash. 2019).  Plaintiffs were not required to become members as a condition

6  of public employment, and so there is no state action in their voluntary decision to

7  sign private membership agreements with the Union, nor in the Controller's

8  ministerial deduction of dues from their paychecks pursuant to those agreements.

9         Moreover, enforcement of Plaintiffs' voluntarily undertaken contractual

10  obligations does not violate the First Amendment.  "[T]he First Amendment does not

11  confer … a constitutional right to disregard promises that would otherwise be

12  enforced under state law."  *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991).

13  Plaintiffs voluntarily chose to become UDW members and to sign express,

14  unambiguous, written agreements to pay dues through payroll deduction for one-year

15  irrevocable periods.  As every court to consider the issue has concluded, *Janus* does

16  not preclude enforcement of such agreements.  *See Anderson v. SEIU Local 503*, 400

17  F.Supp.3d 1113, 1116-17 (D. Or. 2019); *Cooley v. Cal. Statewide Law Enf't Ass'n*

18  ("*Cooley II*"), 385 F.Supp.3d 1077, 1079-80 (E.D. Cal. 2019); *Babb*, 378 F.Supp.3d

19  at 886; *Crockett v. NEA Alaska*, 367 F.Supp.3d 996, 1008 (D. Alaska 2019); *Belgau*

20  *II*, 359 F.Supp.3d at 1016; *Teamsters*, 2019 WL 6647935 at *8-9; *Oliver*, 2019 WL

21  5964778, at *3; *Seager*, 2019 WL 3822001, at *2; *Smith II*, 2019 WL 2476679, at

22  *2; *O'Callaghan*, 2019 WL 2635585, at *3; *Bermudez v. SEIU Local 521*, 2019 WL

23  1615414, at *2 (N.D. Cal. Apr. 16, 2019); *Cooley v. Cal. Statewide Law

24  Enforcement Ass'n* ("*Cooley I*"), 2019 WL 331170, at *3 (E.D. Cal. Jan. 25, 2019);

25  *Smith v. Superior Court* ("*Smith I*"), 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16,

26  2018); *Belgau v. Inslee* ("*Belgau I*"), 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11,

27  2018).  Nor is there any merit to Plaintiffs' suggestion that *Janus* imposes some new,

28

heightened "waiver" requirement; this misreading of *Janus* has been uniformly rejected.  *See Belgau II*, 359 F.Supp.3d at 1016-17; *Anderson*, 400 F.Supp.3d at 1117; *Smith II*, 2019 WL 2476679, at \*2; *O'Callaghan*, 2019 WL 2635585, at \*3; *Cooley I*, 2019 WL 331170, at \*3.

Finally, the Union is entitled to judgment on the pleadings on Plaintiffs' Medicaid Act claim because the provision of the Medicaid Act upon which Plaintiffs rely does not create individual rights enforceable under 42 U.S.C. §1983.

## BACKGROUND

Plaintiffs are providers in California's In Home Supportive Services ("IHSS") Medicaid program, which pays workers to provide in-home services to blind, elderly, and disabled clients.  Cal. Welf. & Inst. Code §12300(a); Complaint, Doc. No. 1, ¶¶17-20.  The Union is the collective bargaining representative for IHSS providers in 21 California counties.  Complaint ¶22.  IHSS providers are not required to join the Union, Cal. Gov't Code §3502, and, since the Supreme Court's decision in *Harris v. Quinn*, 573 U.S. 616 (2014), if they decline to join the Union they are not required to pay any fair share fees to cover the cost of the Union's work on their behalf.

Plaintiffs acknowledge that they all agreed to join the Union, authorized dues deductions, and that their agreements all "contain terms that … make the deductions irrevocable except" during the annual renewal period.  Complaint ¶¶26, 30-31, 35-36, 41, 45-47; *see also* Declaration of Matthew A. Maldonado in Support of Motion for Judgment on the Pleadings ("Maldonado Decl.") ¶¶4-9; *id.* Exh. A-E.[2]  For example, Plaintiff Jose Diaz's card states as follows:

> My financial obligation to the Union to make payments in the amount of monthly dues, and my payroll authorization for that purpose, shall remain in

---

[2] Because Plaintiffs' complaint makes reference to and their claims depend on the contents of their membership and dues deduction agreements, *see* Complaint ¶¶26, 30-31, 35-36, 41, 45-47, those agreements are cognizable on a motion for judgment on the pleadings under the doctrine of "incorporation by reference."  *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

effect for a period of one year from the date of execution regardless of whether I remain a member of the Union, and shall automatically renew for successive periods of one year thereafter, unless I revoke it by giving the Union written notice signed by me during the fifteen (15) day period before the anniversary date of this agreement.

*Id.* Exh. E; *see also* Complaint ¶¶45-47.  Plaintiffs Quirarte and Mr. and Mrs. Le signed dues authorization agreements that contained identical language; Plaintiff Maya's agreement contained substantially similar terms, providing that her "voluntary authorization" of dues would remain in effect for one year and automatically renew for successive annual periods thereafter.  *See* Maldonado Exhs. A-D; Complaint ¶¶30-31, 35-36, 41.

Pursuant to California law, the State Controller deducts union dues from the paychecks of IHSS providers who, like Plaintiffs, have voluntarily joined the Union and authorized dues deduction.  Complaint ¶¶25-26; *see also* Cal. Welf. & Inst. Code §12301.6(i)(2) (directing Controller to deduct IHSS providers' membership dues); *see also* Cal. Gov't Code §§1152, 1153 (providing that the Union may request that the Controller deduct authorized membership dues).

Plaintiffs allege that their dues deduction authorizations are invalid, and the dues violated the First Amendment, because UDW did not affirmatively and expressly explain to each Plaintiff that they (1) had a First Amendment right not to join or pay money to UDW, and (2) were allegedly waiving that right by authorizing union membership and payroll deduction.  Complaint ¶¶62-71.  Plaintiffs also claim that all payroll deductions for IHSS providers, even when validly authorized, violate the anti-reassignment provision of the Medicaid Act.  *Id.* ¶¶73-77.

## LEGAL STANDARD

This motion is brought pursuant to Fed. R. Civ. P. Rules 12(b)(1), 12(c), and 12(h)(3).  Defendants may file a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or 12(h)(3) at any time.  *See Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012).  The court may consider "evidence

1  regarding jurisdiction" on such a motion, and the moving party should prevail "if the
2  material jurisdictional facts are not in dispute and the moving party is entitled to
3  prevail as a matter of law." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th
4  Cir. 1983).

5          "Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same
6  standard of review applies to motions brought under either rule." *Cafasso v. Gen.*
7  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (internal citations
8  omitted).  Thus, a Rule 12(c) motion should be granted if the complaint does not
9  "contain sufficient factual matter, accepted as true, to state a claim to relief that is
10 plausible on its fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations
11 omitted).  A claim is plausible only "when the plaintiff pleads factual content that
12 allows the court to draw the reasonable inference that the defendant is liable for the
13 misconduct alleged." *Id.*  In deciding a motion for judgment on the pleadings, the
14 Court may consider the complaint's allegations as well as "materials incorporated
15 into the complaint by reference, and matters of which the court may take judicial
16 notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th
17 Cir. 2008); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ARGUMENT

### I.   Plaintiffs' claims for prospective relief do not present a live controversy.

21          Plaintiffs must establish Article III jurisdiction for each form of relief they
22 seek. *Davis v. FEC*, 554 U.S. 724, 734 (2008).  They seek declaratory and injunctive
23 relief against the enforcement of UDW members' dues deduction agreements with
24 UDW.  Complaint, Prayer for Relief, ¶¶A-D.  But their claims for prospective relief
25 are moot, so they do not present a justiciable controversy.

26          A claim becomes moot "when the issues presented are no longer 'live' or the
27 parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745
28 F.3d 963, 971 (9th Cir. 2014) (citation omitted).  "If an event occurs that prevents the

1   court from granting effective relief, the claim is moot and must be dismissed." *Am.*

2   *Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

3       Here, Plaintiffs' claims for injunctive and declaratory relief are moot.  UDW

4   has taken the necessary steps to ensure that the Office of the State Controller of

5   California has terminated the deduction of union membership dues from all

6   Plaintiffs' wages.  Maldonado Decl. ¶¶10-14.  Plaintiff Quirarte never paid union

7   dues, and any obligation she would have had to pay such dues has already ended.

8   *Id.*¶10.  The other Plaintiffs' dues deductions ended in July 2019.  *Id.* ¶¶11-14.

9   Therefore, the Court can no longer grant effective declaratory or injunctive relief,

10  and Plaintiffs lack any cognizable interest in obtaining such forward-looking relief.

11      Nor can Plaintiffs show they are likely to suffer any similar alleged injury in

12  the future.  Plaintiffs allege no "concrete, particularized" plans to re-enroll as UDW

13  members in the future; nor would it be plausible to conclude there is a reasonable

14  possibility they would do so, given their allegations that they oppose Union

15  membership.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *see also*

16  Complaint ¶¶33, 37, 42-43, 48, 50.  Plaintiffs' claims for prospective relief therefore

17  do not present a live controversy.  *See Summers*, 555 U.S. at 496; *City of L.A. v.*

18  *Lyons*, 461 U.S. 95, 101-02 (1983); *Babb*, 378 F.Supp.3d at 886; *Oliver*, 2019 WL

19  5964778 at *7; *Seager*, 2019 WL 3822001, at *2; *Molina*, 392 F.Supp.3d at 481;

20  *Smith II*, 2019 WL 2476679, at *1; *O'Callaghan*, 2019 WL 2635585, at *4.

21      Because Plaintiffs' claims for prospective relief are moot, and no class has

22  been certified, they may no longer seek those forms of relief on behalf of themselves

23  or any putative class.  *Emp'rs-Teamsters Local Nos. 175 & 505 Pension Tr.Fund v.*

24  *Anchor Capital Advisers*, 498 F.3d 920, 924 (9th Cir. 2007); *Kremens v. Bartley*, 431

25  U.S. 119, 133 (1977) ("only a 'properly certified' class … may succeed to the

26  adversary position of a named representative whose claim becomes moot"); *see also*

27  *Bernor v. Takeda Pharm. Am., Inc.*, 2018 WL 588563 at *5 (C.D. Cal. Jan. 25, 2018)

28

1   (same).  For that reason, their claims for injunctive and declaratory relief do not

2   present an Article III case or controversy.

3   **II.      Plaintiffs' First Amendment/§1983 claim fails on the merits.**

4        In addition to seeking prospective relief, Plaintiffs also allege a 42 U.S.C.

5   §1983 claim for compensatory or nominal damages or restitution, Complaint, Prayer

6   for Relief ¶E, on the theory that their First Amendment rights were violated by the

7   dues deductions they authorized.  That claim should also be dismissed as meritless.[3]

8   **A.      The terms of Plaintiffs' voluntary dues deduction agreements do**
   **not constitute state action as required to state §1983 claims.**

9

10       Plaintiffs' First Amendment/§1983 claim fails because the terms of Plaintiffs'

11  voluntary, private membership agreements do not constitute "state action" for

12  purposes of the First Amendment or §1983.  *See Belgau II*, 359 F.Supp.3d at 1012-

13  15; *Teamsters*, 2019 WL 6647935 at *5-8; *Oliver*, 2019 WL 5964778, at *4-6.

14       To state a claim under 42 U.S.C. §1983 for violation of the federal

15  constitution, "'the conduct allegedly causing the deprivation of a federal right [must]

16  be fairly attributable to the State.'"  *Ohno v. Yasuma*, 723 F.3d 984, 993 (9th Cir.

17  2013) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 992, 936-37 (1982)).  If the

18  action that Plaintiffs challenge "is not so attributable, then there is no 'state action'

19  and no violation" of §1983.  *Id.*

20       The action that Plaintiffs challenge here is not state compulsion to join a

21  union or to pay involuntary fair-share fees, but rather state enforcement of the private

22  contracts they voluntarily entered into with UDW, a private party.

23       Plaintiffs do not allege that the State required them to become union members

24  or that the State Controller had any role in drafting or setting the terms of their

25

26  _____

    [3] Because Plaintiff Quirarte *never* paid union dues to UDW, Maldonado Decl.

27  ¶10, she suffered no "injury in fact" and lacks standing to seek any relief against the
    Union.  *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Her claims

28  should therefore be dismissed in their entirety for lack of standing.

1  private dues deduction agreement with UDW, but only that the State Controller

2  deducts dues in accordance with those agreements.  Complaint ¶¶23-28.  Where the

3  government actor has no role in setting the terms of dues deduction agreements

4  between a public sector union and its members, but merely enforces those

5  agreements according to their terms, the deductions are not the product of state

6  action.  *See Belgau II*, 359 F.Supp.3d at 1012-13; *Teamsters*, 2019 WL 6647935 at

7  *5-6; *Oliver*, 2019 WL 5964778, at *4-6.  That the government actor may *respond* to

8  a private party's actions "by adjusting [its own conduct] does not render it

9  *responsible* for those actions."  *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982)

10  (emphasis in original).

11        Thus, in *Bain v. California Teachers Association*, 156 F.Supp.3d 1142 (C.D.

12  Cal. 2015), *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018), the court

13  dismissed a complaint brought by union members who alleged that, by offering

14  members-only benefits to dues-paying members, the unions had pressured the

15  plaintiffs to join the union in violation of the First Amendment.  The court explained

16  that voluntary union membership agreements between a union and its public

17  employee members do not involve state action and thus are not subject to First

18  Amendment challenge.  *See id.* at 1147, 1152-53.  The court reasoned that, unlike in

19  cases involving compulsory fair share fees like *Abood* (and *Harris* and *Janus*), the

20  conduct the union member plaintiffs challenged did not involve "compulsion …

21  authorized by state law."  *Id.* at 1152.  The plaintiffs were free to choose whether or

22  not to enter into a contractual agreement with the union, and so could not "establish

23  state action" based on those agreements.  *Id.* at 1153.  The same is true here.

24        As the Ninth Circuit has explained, "[i]n the context of First Amendment

25  challenges to speech-restrictive provisions in private agreements or contracts, …

26  judicial enforcement of terms that could not be enacted by the government has not

27  ordinarily been considered state action" that triggers constitutional scrutiny.  *Ohno*,

28

723 F.3d at 998-99 & 999 n.16 (citing cases); *see also Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1931 (2019) ("[T]he fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function."); *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 844 (9th Cir. 2017) (enforcement of private agreement to arbitrate claims is not state action that permits §1983 suit against party to agreement).

The same reasoning applies to the State Controller's ministerial compliance with the terms of Plaintiffs' private agreements with UDW.  The effectuation of those private agreements does not transform the agreements into state action, and the First Amendment "appl[ies] to and restrict[s] only the … Government and not private persons," *Public Utilities Commission of D.C. v. Pollak*, 343 U.S. 451, 461 (1952).  "Unions are not state actors; they are private actors," vis-à-vis their relationship with their own voluntary members.  *Hallinan v. Fraternal Order of Police, Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009).  Accordingly, there is no state action to trigger a First Amendment/§1983 claim where, as here, the State's policy makes union membership and dues authorization voluntary, and the State simply honors the terms of private choices.

**B.      The enforcement of Plaintiffs' voluntary dues authorization agreements does not violate their First Amendment rights.**

While the absence of state action is dispositive, Plaintiffs' First Amendment claim also fails because Plaintiffs voluntarily and affirmatively agreed to the dues deductions at issue (and received consideration in return), and there is no First Amendment right to renege on voluntarily assumed contractual obligations.

**1.   Plaintiffs expressly authorized the payments they now challenge.**

Plaintiffs' conclusory allegation that Defendants made deductions from their wages "without their consent," Complaint ¶63, is flatly contradicted by the

allegations and documents incorporated in the Complaint. By expressly referencing their dues authorization agreements in the Complaint and admitting that they signed them, *id.* ¶¶26, 30-31, 35-36, 41, 45-47, Plaintiffs have pleaded facts establishing that they affirmatively agreed to the deductions at issue. *See, e.g.*, *Knievel*, 393 F.3d at 1076.

The dues deduction authorizations Plaintiffs signed state, in simple, plain terms, that Plaintiffs:

- "hereby *apply for membership* in the United Domestic Workers Union/AFSCME Local 3930";

- "hereby *authorize the Office of the State Controller of California … to deduct from my payments and to remit to the Union those dues and fees that may now or hereafter be established* by the Union"; and

- that Plaintiffs' "financial obligation to the Union to make payments in the amount of monthly dues, and [their] payroll authorization for that purpose, *shall remain in effect* for a period of one year from the date of execution *regardless of whether I remain a member of the Union*, and *shall automatically renew for successive periods* of one year thereafter, unless I revoke it by giving the Union written notice signed by me during the fifteen (15) day period before the anniversary date of this agreement."

Complaint ¶¶30-31, 35-36, 41, 45-47; Maldonado Decl., Exh. A (emphases added); *see also id.* Exhs. B-E. In these agreements, Plaintiffs expressly "recognize[d] that these authorizations, and the continuation of my obligation to pay dues from year to year, are *voluntary and not a condition of my employment*." Maldonado Decl., Exh. A (emphasis added); *see also id.* Exhs. B-E.

### 2. Plaintiffs' voluntary membership agreements are binding contracts.

Plaintiffs' membership agreements, including the one-year commitment to pay dues in exchange for membership rights and benefits, are binding contracts, as every

court to consider the issue has concluded.  *See O'Callaghan*, 2019 WL 2635585, at *3 ("Plaintiffs affirmatively agreed to the terms of union membership, including the terms regarding dues deductions…."); *Belgau I*, 2018 WL 4931602, at *5 ("Here, unlike in *Janus*, the Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues for one year."); *Smith I*, 2018 WL 6072806, at *1 (plaintiff who signed membership agreement "formed a contract with [the union] in which he agreed to pay dues for a year"); *Fisk v. Inslee* ("*Fisk I*"), 2017 WL 4619223, at *4 (W.D. Wash. Oct. 16, 2017) (signed card with dues authorization agreement was "a valid contract"), *aff'd* ("*Fisk II*"), 759 F.App'x. 632 (9th Cir. 2019); *see also Babb*, 378 F.Supp.3d at 886; *Crockett*, 367 F.Supp.3d at 1008; *Teamsters*, 2019 WL 6647935 at *8; *Oliver*, 2019 WL 5964778, at *3; *Seager*, 2019 WL 3822001, at *2; *Cooley I*, 2019 WL 331170 at *3; *Bermudez*, 2019 WL 1615414 at *2.  Those courts all dismissed First Amendment/§1983 claims indistinguishable from that asserted here based on the plaintiffs' voluntary entry into such agreements.

It is equally well-established that dues authorization agreements can create binding financial obligations that survive an employee's resignation from the union. In the very context at issue here—a dues authorization agreement with a one-year irrevocability period signed by a union member who resigned from union membership before that one-year period expired—the Ninth Circuit explained that a "dues-checkoff authorization is a contract," and "[a] party's duty to perform even a wholly executory contract is not excused merely because he decides that he no longer wants the consideration for which he has bargained…. [T]he clear 'legal import' of the authorization's language … b[i]nd[s] the employee to abstain from revoking the authorization," even after he resigns union membership.  *NLRB v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987); *see also Belgau I*, 2018 WL 4931602, at *5 ("'[A] worker can refuse to associate with or join a union. … But,

1    once she joins voluntarily … she has the obligation to perform the terms of her

2    agreement.'") (quoting *Fisk I*, 2017 WL 4619223, at *5); *Smith I*, 2018 WL

3    6072806, at *1.  The law governing union dues commitments confirms that an

4    individual has the right to resign from a voluntary association "as he sees fit *subject*

5    *of course to any financial obligations due and owing the group with which he was*

6    *associated*."  *NLRB v. Granite State Joint Bd., Textile Workers Union, Local 1029*,

7    409 U.S. 213, 216 (1972) (quotation omitted, emphasis added).[4]

8    
9    ### 3.   The First Amendment does not provide Plaintiffs with a right to breach their voluntary contractual obligations.

10   The enforcement of Plaintiffs' dues authorization agreements did not violate

11   the Constitution because "the First Amendment does not confer … a constitutional

12   right to disregard promises that would otherwise be enforced under state law."

13   *Cohen*, 501 U.S. at 672.  In *Cohen,* the Supreme Court rejected the claim that the

14   First Amendment prohibited the state from enforcing, under promissory estoppel

15   doctrine, a newspaper's promise not to reveal the identity of a confidential source.

16   *Id.* at 666-67.  The Court recognized that promissory estoppel simply "requires those

17   who make certain kinds of promises to keep them."  *Id.* at 672.  The application of

18   that rule therefore did not "offend the First Amendment."  *Id.* at 669.

19   *Cohen* controls this case.  In granting summary judgment for the defendant

20   union against claims analogous to those here, the district court in *Fisk I* explained:

21   
22   The freedom of speech and the freedom of association do not trump the
     obligations and promises voluntarily and knowingly assumed. The other party

23   to that contract has every reason to depend on those promises for the purpose
     of planning and budgeting resources.  The Constitution says nothing

24   affirmative about reneging legal and lawful responsibilities freely undertaken.

25   

26   ───────────
     [4] *See also NLRB v. U.S. Postal Serv.*, 833 F.2d 1195, 1196 (6th Cir. 1987)

27   (dues authorization not revocable despite resignation from membership); *Int'l Ass'n
     of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 492 (7th Cir. 2018) (same); *United*

28   *Steelworkers of Am. Local 4671*, 302 NLRB 367, 368 (1991) (same).

*Fisk*, 2017 WL 4619223, at *5.  The Ninth Circuit affirmed the district court's *Fisk I* decision in an unpublished order, confirming that the public employer's "deduction of union dues in accordance with the membership cards' dues irrevocability provision does not violate [the employees'] First Amendment rights" because "the First Amendment does not preclude the enforcement of 'legal obligations' that are bargained for and 'self-imposed' under state contract law."  *Fisk II*, 759 F.App'x at 633 (citing *Cohen*, 501 U.S. at 668-71).  Every court to reach the issue has agreed. *See Crockett*, 367 F.Supp.3d at 1008; *Babb*, 378 F.Supp.3d at 886; *Teamsters*, 2019 WL 6647935 at *8-9; *Oliver*, 2019 WL 5964778, at *3; *Seager*, 2019 WL 3822001, at *2; *O'Callaghan*, 2019 WL 2635585, at *4; *Bermudez*, 2019 WL 1615414 at *2; *Cooley I*, 2019 WL 331170, at *3; *Smith I*, 2018 WL 6072806, at *1; *Belgau I*, 2018 WL 4931602, at *5; *Fisk*, 2017 WL 4619223, at *4.  So too should this Court.

### 4. *Janus* does not change the governing legal analysis here by imposing a new heightened waiver requirement.

*Janus* did not change the law governing the formation and enforcement of voluntary contracts between unions and their members.  Nor did *Janus* implicitly overrule *Cohen*'s holding that voluntary contracts are fully enforceable even when the First Amendment would have precluded the government from requiring a party to engage in the same activity and without the need for a special "waiver" analysis.

The relationship between unions and their members was not at issue in *Janus*. The question in *Janus* (and also in *Harris*, 573 U.S. at 620, 656) was whether it was consistent with the First Amendment for a state to compel *nonmembers* of a union— i.e., individuals who have *not* affirmatively chosen to join a union and have *not* affirmatively chosen to enter into a contract to secure member rights and benefits in exchange for paying dues—to pay fees to a union as a condition of government employment.  138 S.Ct. at 2459-60.  The Supreme Court held that the First Amendment prohibited requiring public employees to pay money to unions as a

condition of employment, and so overruled *Abood*, 431 U.S. 209.  But the passage from *Janus* that Plaintiffs rely on to argue that the First Amendment also invalidates their voluntary agreement to pay union dues, *see* Complaint ¶¶2, 63, confirms that *Janus* focuses exclusively on the rights of *non*members:

> Neither an agency fee nor any other payment to the union may be deducted from a *nonmember's* wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, *nonmembers* are waiving their First Amendment rights, and such a waiver cannot be presumed.

138 S.Ct. at 2486 (emphases added).  *Janus* was concerned with government compulsion—whether the government could *require* nonmembers to pay fair-share fees or assume that nonmembers wish to support the union when they have not affirmatively consented to the payments—not with voluntary agreements to join and support a union.[5]

Plaintiffs' voluntary decision to choose union membership and expressly commit to paying dues for irrevocable annual periods is completely different from the compelled nonmember payments at issue in *Janus*.  *See Kidwell v. Transp.*

---

[5] The four cases cited by *Janus* in the decision's "waiver" passage (138 S.Ct. at 2486) involved litigants who had not affirmatively undertaken *any* obligations, much less entered into bilateral contracts to perform those obligations in exchange for consideration.  Each case concerned whether waiver could be found solely from the plaintiff's *inaction,* which is the issue that passage addressed.  *See Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938) (addressing whether pro se defendant had properly waived his Sixth Amendment right to counsel by failing to ask that counsel be appointed); *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-80 (1999) (rejecting argument that State had "constructively" waived sovereign immunity by engaging in activity that Congress decided to regulate); *Knox v. SEIU, Local 1000*, 567 U.S. 298, 315, 322 (2012) (nonmembers of union could not be deemed to consent to union political assessment through their silence); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 142-44 (1967) (libel defendant could not be deemed to have waived, through its silence, libel defense later recognized in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

*Commc'ns Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991) ("Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced.  The employee is a union member voluntarily."). Plaintiffs may "*want*[] *Janus* to stand for the proposition that any union member can change his mind at the drop of a hat, invoke the First Amendment, and renege on his contractual obligation to pay dues." *Smith I*, 2018 WL 6072806, at *1 (emphasis added).  But *that* is not what *Janus* says, and the First Amendment does not protect any such right.  "*Janus* says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues." *Belgau I*, 2018 WL 4931602, at *5; *see also, e.g.*, *Teamsters*, 2019 WL 6647935 at *8-9; *Smith I*, 2018 WL 6072806, at *1; *Cooley I*, 2019 WL 331170 at *3.  The right recognized in *Janus* not to be compelled by the government to pay fees to a union that one has not chosen to join simply is not at issue here.[6]

The essence of Plaintiffs' First Amendment argument is that some new special waiver requirement applies to voluntary union membership agreements after *Janus.* Their theory would render invalid every union dues deduction authorization card signed by every public employee in the United States who voluntarily chose to become a union member, and entitle all of these current or former members to

---

[6] In fact, reading *Janus* in the manner Plaintiffs suggest would conflict with unions' and their members' *own* First Amendment rights to associate.  Plaintiffs' continued payment of union dues here results not from state compulsion, but from their purely voluntary decisions to become union members and authorize the payments.  By joining UDW, Plaintiffs *affirmatively* exercised the constitutional right guaranteed under the First Amendment to join and associate with a labor union. *See AFSCME v. Woodward*, 406 F.2d 137, 139 (8th Cir. 1969) ("Union membership is protected by the right of association under the First and Fourteenth Amendments.").  Private associations, including labor unions, have a First Amendment right to associate with their members on their own agreed-upon terms. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) ("Government actions that may unconstitutionally burden th[e] freedom [of association] may take many forms, one of which is 'intrusion into the internal structure or affairs of an association'") (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)).

damages under §1983.  But that is precisely the opposite of what the Supreme Court held in *Janus*.  The Supreme Court expressly admonished that "States can keep their labor-relations systems exactly as they are—only they cannot force *nonmembers* to subsidize public-sector unions."  *Janus*, 138 S.Ct. at 2485 n.27 (emphasis added).  Courts have, accordingly, uniformly rejected the overbroad interpretation of *Janus* that Plaintiffs advance here.  *See, e.g.*, *Anderson*, 400 F.Supp.3d at 1117; *Belgau II*, 359 F.Supp.3d at 1016-17; *Teamsters*, 2019 WL 6647935 at *9; *Smith II*, 2019 WL 2476679, at *2; *O'Callaghan*, 2019 WL 2635585, at *3; *Cooley I*, 2019 WL 331170, at *3.

### 5. Even if a "waiver" analysis were applicable here, Plaintiffs waived any right not to pay dues to UDW by clearly and affirmatively agreeing to pay that money.

Even if it were appropriate to apply a constitutional "waiver" analysis to Plaintiffs' UDW dues deduction agreements, Plaintiffs waived any right not to pay money to UDW by expressly agreeing to make the payments they now challenge.

The First Amendment does not require magic words in private contracts to pay money.  *See, e.g.*, *Perricone v. Perricone*, 972 A.2d 666, 682, 682 n.22 (Conn. 2009); *see also id.* at 682 n.21 (collecting cases).  Plaintiffs' dues deduction authorization agreements are simple and clear on their face.  The essence of the agreements was Plaintiffs' promises to pay the money that they now seek to recover. By entering into a private contract enforceable under state law to pay money to a private organization, a party necessarily "waives" any rights it may have against enforcement of the obligation to pay that money.  *Janus* itself "acknowledges … that employees can waive their First Amendment rights by affirmatively consenting to pay union dues."  *Smith I*, 2018 WL 6072806, at *1; *see Janus*, 138 S.Ct. at 2486 ("*By agreeing to pay*, nonmembers *are waiving* their First Amendment rights ….") (emphases added).  That is precisely what Plaintiffs did.

1    There is no support for Plaintiffs' contention that their voluntary agreements

2  to pay money were not "knowing" because the contracts they signed did not

3  expressly state that potential signatories have a "First Amendment right not to

4  subsidize UDW and its speech or … that the provider waives that right by executing"

5  the agreement.  Complaint ¶27.  *Cohen* disposes of this argument; the newspaper's

6  promise not to reveal the source's identity was enforceable notwithstanding the

7  absence of any express First Amendment waiver.  *See generally* 501 U.S. 663.

8    Other authorities confirm that there is no requirement that contracts with

9  unions must include express disclaimers that are not required in any other private

10  agreement to pay money in exchange for consideration.  Even "assum[ing] ... an

11  agreement between private parties to restrict speech implicates the first amendment,"

12  a voluntary "agreement [that] clearly sets forth the restrictions" is enforceable

13  without the need for "the talismanic recital of the words 'first amendment.'"

14  *Perricone*, 972 A.2d at 682, 682 n.22.  Indeed, even contracts with the government

15  (which Plaintiffs' dues authorization agreements are not) do not need such

16  disclaimers in order to make valid waivers of constitutional rights.  *See, e.g., Charter*

17  *Commc'ns, Inc. v. Cty. of Santa Cruz*, 304 F.3d 927, 935 (9th Cir. 2002) (plaintiff

18  "voluntarily entered into an agreement under which the County had to approve any

19  transfer of the franchise," and "thus, to that extent, waived its right to claim that a

20  denial of transfer violated its First Amendment rights"); *Leonard v. Clark*, 12 F.3d

21  885, 886, 889-90 (9th Cir. 1994) (collective bargaining agreement with government

22  waived union's First Amendment rights, despite absence of express reference to

23  "First Amendment").  Likewise, private non-disclosure agreements are enforceable

24  when they are voluntary and clearly impose the restriction—even without expressly

25  referring to the First Amendment, even when the information is of public concern,

26  and even when enforced by an injunction that would otherwise be an

27  unconstitutional prior restraint.  *See, e.g., Nat'l Abortion Fed'n v. Ctr. for Med.*

28

*Progress*, 685 F.App'x 623, 626 (9th Cir. 2017) (plaintiffs "waived any First Amendment rights to disclose that information publicly by knowingly signing the agreements" (citing *Leonard*, 12 F.3d at 889)), *cert. denied*, 138 S.Ct. 1438-39 (2018).

In sum, Plaintiffs' affirmative, unambiguous, written agreements to authorize dues deductions would be a "waiver" of any claim that the deductions violate Plaintiffs' First Amendment rights even if a waiver analysis applied.

**III.   Plaintiffs' Medicaid Act claim should be dismissed because the relevant Medicaid Act provision does not create rights enforceable under §1983.**

Plaintiffs' claim that voluntarily authorized deduction of membership dues violates the Medicaid Act's "anti-reassignment" provision, 42 U.S.C. §1396a(a)(32), Complaint ¶¶73-77, fails as a matter of law.  Section 1983 creates a cause of action for violations of federal statutes that create individual rights, *Blessing v. Freestone*, 520 U.S. 329, 340 (1997), which the anti-reassignment provision does not.

**A.   Statutory background**

**1.   The Medicaid Act and its "anti-reassignment" provision**

Medicaid is a joint federal/state program through which the federal government provides matching funds for certain state health care expenditures, so long as the states comply with certain conditions.  Those conditions are phrased as requirements of a State Medicaid Plan (a written plan that every state is required to have).  *See* 42 U.S.C. §1396a(a) ("A State plan for medical assistance must …. "). If a state Medicaid Plan or its administration violates the Medicaid Act, the Secretary of the federal Department of Health and Human Services has authority to withhold Medicaid payments to the state, pursuant to an administrative process.  42 U.S.C. §1396c; *see also* 42 CFR 430.35; 42 CFR Part 430, Subpart D.

Among the Medicaid Act's requirements for State Plans is the "anti-reassignment" provision, 42 U.S.C. §1396a(a)(32).[7]  This provision requires State Plans to "provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise," except for certain specified exceptions. 42 U.S.C. §1396a(a)(32).

Congress adopted the anti-reassignment provision in 1972 as a fraud prevention measure, to address the practice of "factoring," under which Medicaid providers assigned their payment claims to a third party, such as a collection agency. Congress was concerned that the practice had led to "incorrect and inflated claims for services and…created administrative problems with respect to determinations of reasonable charges and recovery of overpayments."  S. Rep. No. 92-1230, 92d Cong., 2d Sess. 205 (1972).  As a House Committee Report explained:

> [S]ome physicians and other persons providing services reassign their rights to other organizations or groups under conditions whereby the organization or group submits claims and receives payment in its own name. Such reassignments have been a source of incorrect and inflated claims for services and have created administrative problems with respect to determinations of reasonable charges and recovery of overpayments.

H.R. Rep. No. 92-231, 92d Cong., 2d Sess. (1972), 1972 U.S.C.C.A.N. 4989, 5090; *see also* S. Rep. No. 92-1230 at 205.[8]

---

[7] The prohibition is of "reassignment" rather than assignment because the state first assigns the right to payment to the Medicaid the provider.  Any assignment by a provider is then considered a reassignment.

[8] The relevant legislative history is summarized in several court decisions.  *See DFS Secured Healthcare Receivables Tr. v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 350 (7th Cir. 2004) ("Before this statute, health care providers assigned their right to Medicare receivables to third parties which then submitted incorrect and inflated claims to be paid in their own names, creating administrative nightmares and overpayments in excess of one million dollars.  H.R. Rep. No. 92-231, 1972 U.S.C.C.A.N. at 5090.  Therefore, Congress passed this statute to remedy this

In other words, the object of Congress' prohibition was the reassignment of claims such that the third party could itself make a claim for payment in its own name.  Thus, the 1972 House and Senate Reports discuss the provision under the heading, "Prohibition against reassignment of claims to benefits."  H.R. Rep. No. 92-231, 1972 U.S.C.C.A.N. at 5090; S. Rep. No. 92-1230 at 204.

The anti-reassignment provision was amended in 1977, "to preclude the use of a power of attorney as a device to circumvent the existing ban on the use of 'factoring' arrangements in connection with the payment of claims."  H.R. Rep. No. 95-393, 95th Cong., 1st Sess. 48 (1977), 1977 U.S.C.C.A.N. 3039, 3051.[9]  The Senate Report explained the original intent of the anti-reassignment provision:

> In 1972, the Congress took action to stop a practice under which some physicians and other persons providing services under medicare and medicaid reassigned their medicare and medicaid receivables to other organizations or groups.  Under the conditions of these reassignments, the organizations or groups purchased the receivables for a percentage of their face value, submitted claims and received payment in their name.  By 1972, it had become apparent that such reassignments were a significant source of incorrect and inflated claims for services paid by medicare and medicaid.  In addition, cases of fraudulent billings by collection agencies and substantial overpayment to these so-called 'factoring' agencies were also found.

S. Rep. No. 95-453, 95th Cong., 1st Sess. 48 (1977), 1977 U.S.C.C.A.N. 3039, 3051.

---

problem by ensuring that payments would be made directly to healthcare providers."); *In re Missionary Baptist Foundation of America, Inc.,* 796 F.2d 752, 757 n.6 (5th Cir. 1986) ("An examination of the legislative history of this provision reveals that its purpose was to prevent 'factoring' agencies from purchasing medicare and medicaid accounts receivable at a discount and then serving as the collection agency for the accounts").

[9] *See also* S. Rep. No. 95-453 at 49, 1977 U.S.C.C.A.N. at 3051 ("The use of a power of attorney allows the factoring company to receive the medicare or medicaid payment in the name of the physician, thus allowing the continuation of program abuses which factoring activities were shown to produce in the past.  The bill would modify existing law to preclude the use of power of attorney as a device for reassignments of benefits under Medicare and Medicaid.").

### 2.    Medicaid's home care program and union dues deductions

California's IHSS program operates, as relevant here, through a "consumer-directed" or "individual provider" model—where consumers have the right to select, hire, fire, and supervise their own home care providers—rather than through an "agency provider" model, where the agencies hire, fire, select, and supervise their home care employees. Cal. Welf. & Inst. Code §12301.6(c)(1), (2)(B).

Unlike payments for Medicaid services that go to an institution (like a hospital, nursing home, or home care agency), which then pays its employees, Medicaid payments for IHSS services under the "consumer-directed" model at issue in this case are made directly to the individuals who provide the home care services. Complaint ¶21.[10]  This is true, and has been true for decades, of other similar consumer-directed models in numerous states around the country.  California and other states also deduct payroll taxes, health benefit contributions, life insurance payments, and other common deductions from home care providers' paychecks.

### 3.    2014 regulation and 2018 withdrawal

In 2014, the federal Medicaid agency Centers for Medicare & Medicaid Services ("CMS") amended its regulation, 42 C.F.R. §447.10, titled "Prohibition against reassignment of provider claims," to add language confirming that the anti-reassignment statutory provision does not prohibit states from making payments to third parties on behalf of individual providers for health benefits, skills training, and "other benefits customary for employees," where the individual is a type of practitioner for whom Medicaid is the primary revenue source (as are, here, IHSS providers).  79 Fed. Reg. 2948, 2949 (Jan. 16, 2014) (adding 42 C.F.R. § 447.10(g)(4)).  The 2014 rule thus confirmed the longstanding practice of states to

---

[10] When Medicaid home care service are provided under an "agency provider" model, through home care agencies, the Medicaid program pays the agencies and the agencies issue paychecks to their home care provider employees.  Agency-employed home care providers are not at issue in this case, because deductions are made from their agency paychecks rather than from checks issued by the State of California.

allow for regular employment-type deductions from the paychecks of certain Medicaid providers like IHSS home care workers, and CMS's longstanding understanding that this practice did not violate the anti-reassignment provision.

On May 6, 2018, CMS took final regulatory action withdrawing the 2014 rule. CMS's action was immediately challenged in court by the States of California, Oregon, Connecticut, Massachusetts, and Washington, because it was based on CMS's erroneous construction of the anti-reassignment provision as prohibiting all deductions from Medicaid providers' paychecks—including not only voluntary union dues deductions but also health and welfare benefits deductions—and seeks to change what that provision has meant for over 40 years (long before CMS promulgated the 2014 rule). *See California v. Azar*, No. 19-cv-02552 (N.D. Cal.).[11]

## B. The Medicaid Act anti-reassignment provision does not create an individual "right" enforceable under 42 U.S.C. §1983

Plaintiffs assert a cause of action under 42 U.S.C. §1983 for violation of the anti-reassignment provision. Complaint ¶¶76-77. To seek redress for a legal wrong under §1983, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing*, 520 U.S. at 340 (emphasis in original). To establish that a federal statute confers an enforceable right a plaintiff must demonstrate, among other things, that Congress "intended that the provision in question benefit the plaintiff." *Id.* In *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the Court clarified that "anything short of an unambiguously conferred right" could not "support a cause of action brought under" §1983, emphasizing that only "*rights*, not the broader or vaguer 'benefits' or 'interests,' … may be enforced under the authority of that section," *id.* at 283 (emphasis in original). Accordingly, only "Congress's use of explicit, individually focused, rights-creating language" that

---

[11] UDW, another local homecare provider union, and individual homecare providers intervened in the Administrative Procedures Act case. Intervenors also assert constitutional challenges to the regulatory action.

confers rights upon an "'identifiable class'" suffices to establish an actionable right under §1983. *Sanchez v. Johnson*, 416 F.3d 1051, 1057 (9th Cir. 2005) (quoting *Gonzaga*, 536 U.S. at 284). And a statute confers such rights only if "its text [is] phrased in terms of the persons benefited … with an *unmistakable focus* on the benefited class." *Gonzaga*, 536 U.S. at 284 (emphasis in original; quotation omitted).

The Medicaid Act's anti-reassignment provision, 42 U.S.C. §1396a(a)(32), requires that Medicaid state plans "provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service." That provision "speaks not of any individual's right," *Sanchez*, 416 F.3d at 1059, but merely prohibits certain practices that have historically resulted in injury to the federal government. While the anti-reassignment provision's language *mentions* providers, that is not helpful to Plaintiffs, because providers are discussed "as a means to an administrative end rather than as individual *beneficiaries* of the statute." *Id.* (emphasis added) (provision requiring methods and procedures "sufficient to enlist enough [Medicaid] providers" creates no individually enforceable right).

Plaintiffs may argue that providers "benefit" from this provision, but "they are, at best, indirect beneficiaries and it would strain common sense to read [the provision] as creating a 'right' enforceable by them." *Id.* In fact, Plaintiffs' reading of the anti-reassignment would prohibit the State from processing *any* payroll deductions for Medicaid providers, including IHSS providers' voluntarily designated deductions to pay their required monthly contributions toward health plans, dental plans, pensions, and union dues.[12] It would make little sense to view the provision as

_____

[12] While this motion is based on the absence of an enforceable right, the Union in no way concedes that deductions for union dues violate the anti-reassignment provision. Such deductions do not involve payments "under the plan for any care or service," because they are made by IHSS providers from already earned wages, not

1  granting a "right" to providers when under Plaintiffs' construction it would interfere

2  with the implementation of their voluntary choices.

3      The anti-reassignment provision thus lacks "the sort of 'rights-creating'

4  language critical to showing the requisite congressional intent to create new rights."

5  *Gonzaga*, 536 U.S. at 287 (citation omitted).  As the only recent federal district court

6  decision on the subject reasoned, the anti-reassignment provision's "text is phrased

7  conditionally, in the negative…. [T]here is no rights-conferring language in the

8  provision."  *Transitional Servs. of N.Y. for Long Island, Inc. v. N.Y. State Office of*

9  *Mental Health*, 91 F.Supp.3d 438, 444 (E.D.N.Y. 2015).  It "is clearly a prohibition

10  on factoring"—that is, on certain conduct by providers—not a provision that confers

11  rights upon Medicaid providers.  *Id.* at 445.[13]

12      Nor is Plaintiffs' construction of the anti-reassignment provision as creating an

13  individually enforceable right "supported by other indicia so unambiguous that we

14

15  by the federal government for Medicaid services.  Nor are they made "under an

16  assignment or power of attorney," because union members do not assign their right
   to receive Medicaid payments to their union or grant their union any power of

17  attorney.  The residual "or otherwise" language of the provision cannot reasonably

18  be construed to cover such deductions; under established statutory interpretation
   canons, that language must be interpreted to refer only to mechanisms similar to an

19  "assignment" or "power of attorney" that permit third parties to act in the provider's

20  shoes in seeking Medicaid payments, and thus present a similar potential for abuse.
   "As in all cases of statutory construction, [the] task is to interpret the words of the[]

21  statute[] in light of the purposes Congress sought to serve."  *Chapman v. Houston*

22  *Welfare Rts. Org.*, 441 U.S. 600, 608 (1979).  Here, those purposes are to prevent
   factoring, not standard payroll deductions to pay for voluntarily authorized benefits

23  and dues.  CMS's contrary interpretation is not entitled to any deference because

24  CMS did not purport to clarify any statutory ambiguity.  *See Chevron U.S.A., Inc. v.*
   *NRDC, Inc.*, 467 U.S. 837, 842-43 (1984).

25      [13] As *Transitional Services* pointed out, 91 F.Supp.3d at 445, in reaching a

26  contrary conclusion, *AHS Tulsa Reg'l Med. Ctr. v. Fogarty*, No. 07-CV-338-CVE-
   SAJ, 2007 WL 3046441, at *2-3 (N.D. Okla. Oct. 16, 2007), misread the statutory

27  language and failed to address Congressional purpose, when it assumed that the anti-

28  reassignment provision creates a provider right to receive payment.

are left without any doubt that Congress intended to create an individual, enforceable right remediable under §1983." *Sanchez*, 416 F.3d at 1058. There is *no* indication that Congress intended the anti-reassignment provision to confer rights upon providers. In fact, as explained in detail *supra* at 18-20, the legislative history and judicial interpretations of the provision show precisely the opposite: it was enacted to prevent "factoring," a practice wherein providers sold Medicaid receivables at a discount to third parties, who in turn submitted the claims so assigned to the government in their own names, resulting in financial losses to the federal government. Thus, the anti-reassignment provision's purpose is to prevent factoring, not to give providers any enforceable rights.

"[W]here," as here, "the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under §1983 or under an implied right of action." *Gonzaga*, 536 U.S. at 286; *see also Suter v. Artist M.*, 503 U.S. 347, 363-364 (1992) (declining to recognize implied statutory private right of action for same reasons that led Court to conclude that suit could not proceed under §1983). For this reason alone, Plaintiffs' third cause of action claim should be dismissed.

The absence of a cause of action that private litigants can assert under 42 U.S.C. §1983 does not, of course, mean that the anti-reassignment provision is unenforceable. Rather, as with most provisions of the Medicaid Act, enforcement would be by the Secretary as authorized by statute and regulations that provide a process for withholding Medicaid funds from noncompliant states. *See supra* at 18.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims fail as a matter of law. Therefore, the Union's motion for judgment on the pleadings should be granted in its entirety.

Dated: December 13, 2019                    Respectfully submitted,

SCOTT A. KRONLAND

STACEY M. LEYTON
REBECCA C. LEE
Altshuler Berzon LLP

By: ___*/s/ Stacey M. Leyton*___
      Stacey M. Leyton

Attorneys for Defendant United Domestic
Workers of America, AFSCME Local 3930