XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
LARA HADDAD
Deputy Attorney General
State Bar No. 319630
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6250
  Fax:  (916) 731-2124
  E-mail:  Lara.Haddad@doj.ca.gov
*Attorneys for Defendants Attorney General*
*of California and California State Controller*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALICIA QUIRARTE; NORA MAYA; ANH LE; VIET LE; and JOSE DIAZ,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**UNITED DOMESTIC WORKERS AFSCME LOCAL 3930, a labor organization; and BETTY YEE, in her official capacity as State Controller of the State of California,**<br><br>Defendants,<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of California,**<br><br>Defendant-Intervenor. | Case No. 19-cv-1287-CAB-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CALIFORNIA STATE CONTROLLER'S AND ATTORNEY GENERAL OF CALIFORNIA'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:          January 31, 2020<br>Dept:          4C<br>Judge:         The Honorable Cathy Ann Bencivengo<br>Action Filed: July 11, 2019 |

1

# TABLE OF CONTENTS

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

INTRODUCTION ............................................................................. 1

FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND ................. 2

   I.    Complaint Allegations ........................................................ 2

   II.   California Welfare and Institutions Code Section 12301.6(i)(2) ........ 3

   III.  Defendants' Response ........................................................ 3

LEGAL STANDARD ........................................................................ 4

ARGUMENT ................................................................................. 5

   I.    Plaintiffs Cannot State a Constitutional Challenge to California Welfare and Institutions Code Section 12301.6(i)(2) or a Claim Against State Controller, Because Their Purported Harms are Not Based on Any State Action, But on Private Membership Agreements with the Union ............................................... 5

      A.   The Union's Deduction of Dues Is Not Based on a Right or Privilege Created by the State .................................... 6

      B.   The Union Is Not a "State Actor" ................................. 8

         1.   The "Public Function" Test ................................ 9

         2.   The "Joint Action" Test .................................. 10

         3.   The "State Compulsion" Test ........................... 11

         4.   The "Government Nexus" Test ......................... 11

   II.   Plaintiffs Fail to State a Claim for Relief for Illegal Dues Skimming Under the Medicaid Act ...................................... 13

      A.   The Eleventh Amendment Bars Plaintiffs' Medicaid Act Claim Against the State ............................................ 13

      B.   Plaintiffs Lack Standing to Seek Relief Under the Medicaid Act .................................................... 14

      C.   The Medicaid Act Provision Challenged Here Does Not Create a Private Right of Action Under 42 U.S.C. § 1983 ....... 16

CONCLUSION .............................................................................. 18

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Aliser v. SEIU California*
   2019 WL 6711470 (N.D. Cal. Dec. 10, 2019) (Chhabria, J.) ...................... 15, 18

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*
   526 U.S. 40 (1999) ................................................................................. 8

*Bain v. Cal. Teachers Ass'n*
   156 F. Supp. 3d 1142 (C.D. Cal 2015) ............................................. 5, 12

*Bain v. Cal. Teachers Ass'n*
   No. 2:15-cv-02456-SVW-AJW, 2016 WL 6804921 (C.D. Cal. May
   2, 2016) .................................................................................................. 12

*Belgau v. Inslee*
   359 F. Supp. 3d 1000 (W.D. Wash. Feb. 15, 2019) ............................... 7

*Blessing v. Freestone*
   520 U.S. 329 (1997) ............................................................................. 17

*Blum v. Yaretsky*
   457 U.S. 991 (1982) ............................................................................... 6

*California et al. v. Azar et al.*
   No. 19-cv-02552 (N.D. Cal.) (filed May 13, 2019) ............................. 14

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*
   590 F.3d 806 (9th Cir. 2010) .......................................................... 7, 11

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983) ............................................................................... 15

*Cobb v. Saturn Land Co., Inc.*
   966 F.2d 1334 (10th Cir. 1992) ............................................................. 8

*Crumpton v. Gates*
   947 F.2d 1418 (9th Cir. 1991) ............................................................. 17

*Danvers Pathology Assocs., Inc. v. Atkins*
   757 F.2d 427 (1st Cir. 1985) (Breyer, J.) ........................................... 17

ii

1
2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

3
4

*Delgado v. Smith*
   861 F.2d 1489 (11th Cir. 1988) ................................................................. 8

5
6

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*
   132 F.3d 526 (9th Cir. 1997) ..................................................................... 4

7
8

*Flagg Bros., Inc. v. Brooks*
   436 U.S. 149 (1978) .................................................................................. 7

9
10

*Florer v. Congregation Pidyon Shevuyim, N.A.*
   639 F.3d 916 (9th Cir. 2011) ..................................................................... 9

11

*Franceschi v. Schwartz*
   57 F.3d 828 (9th Cir. 1995) ..................................................................... 13

12
13
14

*Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day
   Adventist Congregational Church*
   887 F.2d 228 (9th Cir. 1989) ..................................................................... 4

15
16

*Golden State Transit Corp. v. Los Angeles*
   493 U.S. 103 (1989) ................................................................................ 17

17
18

*Gonzaga Univ. v. Doe*
   536 U.S. 273 (2002) ................................................................................ 17

19

*Harris v. Quinn*
   573 U.S. 616 (2014) .................................................................................. 7

20
21

*Hebert Abstract Co. v. Touchstone Props., Ltd.*
   914 F.2d 74 (5th Cir. 1990) (per curiam) ................................................. 5

22
23

*Heliotrope Gen., Inc. v. Ford Motor Co.*
   189 F.3d 971 (9th Cir. 1999) ..................................................................... 5

24
25

*In re Digimarc Corp. Derivative Litig.*
   549 F.3d 1223 (9th Cir. 2008) ................................................................. 16

26
27

*Janus v. American Federation of State, County, and Municipal
   Employees Council 31*
   138 S. Ct. 2448 (June 27, 2018) ......................................................... 1, 3, 7

28

iii

1

2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

3

*Kidwell v. Transp. Commc'ns Int'l Union*

4

 946 F.2d 283 (4th Cir. 1991) ................................................................ 12

5

*Lee v. Katz*

6

 276 F.3d 550 .............................................................................................. 9

7

*Lujan v. Defenders of Wildlife*

8

 504 U.S. 555 (1992) ................................................................................ 15

9

*Manhattan Cmty. Access Corp. v. Halleck*

 139 S. Ct. 1921 (2019) .................................................................... 8, 9, 12

10

*Michael Reese Physicians & Surgeons, S.C. v. Quern*

11

 606 F.2d 732 (7th Cir. 1979) ................................................................. 16

12

*Morgan v. Cnty. of Yolo*

13

 436 F. Supp. 2d 1152 (E.D. Cal. 2006) .................................................... 4

14

*Naoko Ohno v. Yuko Yasuma*

15

 723 F.3d 984 (9th Cir. 2013) ......................................................... *passim*

16

*Pennhurst State Sch. Hosp. v. Halderman*

17

 465 US 89 (1984) .................................................................................... 13

18

*Schuett v. FedEx Corp.*

19

 119 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................... 4

20

*Summers v. Earth Island Inst.*

 555 U.S. 488 (2009) ................................................................................ 15

21

*Transitional Servs. of N.Y. for Long Island, Inc. v. N.Y.S. Office of*

22

 *Mental Health*

23

 91 F. Supp. 3d 438 (E.D.N.Y. 2015) ..................................................... 18

24

*Ex parte Young*

25

 209 U.S. 123 (1908) ................................................................................ 14

26

**STATUTES**

27

42 U.S.C. § 1983 .......................................................................... *passim*

28

1

<strong><u>TABLE OF AUTHORITIES</u></strong><br><strong>(continued)</strong>

2

<strong><u>Page</u></strong>

3

California Government Code
    §§ 1152, 1153 ........................................................................... 3, 12

4

5

2002 Cal. Legis. Serv.
    Chapter 1135 .................................................................................. 3

6

7

California Welfare and Institutions Code
    § 12301.6(i)(2) ....................................................................... *passim*

8

Medicaid Act, 42 U.S.C. § 1396a(a)(32) ................................. *passim*

9

10

**CONSTITUTIONAL PROVISIONS**

11

First Amendment ........................................................... *passim*

12

Eleventh Amendment ...................................................... *passim*

13

United States Constitution
    Amendment XI .............................................................. 13

14

15

**COURT RULES**

16

Federal Rule of Civil Procedure 12(c) ........................................ 4, 6

17

18

**OTHER AUTHORITIES**

19

42 C.F.R.
    § 447.10(g)(4) ........................................................... 14

20

79 Fed. Reg. 2948, 2949 (Jan. 16, 2014) ............................ 14

21

22

Assembly Bill No. 2235 (2002 Cal. Legis. Serv. Ch. 1135) ........ 3

23

24

25

26

27

28

**INTRODUCTION**

This case concerns the deduction of dues, processed by the California State Controller, from the paychecks of in-home service providers who signed union membership and dues authorization agreements with their collective bargaining representative.  Those providers subsequently resigned their memberships, and now object that dues continue to be deducted from their paychecks pursuant to the terms of those agreements in violation of their First Amendment rights.  In the same claim, Plaintiffs allege that California Welfare and Institutions Code section 12301.6(i)(2) ("section 12301.6(i)(2)"), which requires the State Controller to deduct dues of certain public employees pursuant to the applicable collective bargaining agreement, is unconstitutional.  Complaint, filed July 11, 2019 (Doc. No. 1) ("Compl.") at 17, ¶ 70.

But Plaintiffs have failed to allege a claim for relief under 42 U.S.C. section 1983, because their constitutional challenges to section 12301.6(i)(2) and to the State Controller's actions fail as a matter of law.  Their alleged injuries do not arise from a state action implicating any constitutional right, but rather from a private dues authorization agreement signed by Plaintiffs with their exclusive bargaining representative.  Plaintiffs do not allege that they were compelled by state law to sign that agreement, and so the Supreme Court's decision in *Janus v. American Federation of State, County, and Municipal Employees Council 31*, 138 S. Ct. 2448 (June 27, 2018), which struck down *mandatory* agency fees paid by public sector employees, does not apply.  Similarly, Plaintiffs lack standing to challenge section 12301.6(i)(2) because they have not alleged facts sufficient to show that any state action is the cause of their harms.

Plaintiffs also allege that the State violated the federal Medicaid Act by making dues payments to unions representing in-home service providers.  Plaintiffs' claim under the Medicaid Act must also be dismissed because that statute does not provide for a private right of action on behalf of the Plaintiffs.  Moreover,

1

the Eleventh Amendment—which generally bars federal suits against a state by its own residents—bars Plaintiffs' second claim for reliefs under the Medicaid Act.

Accordingly, Attorney General Becerra and State Controller Yee respectfully request that this Court grant judgment on the pleadings for the State Controller and Attorney General on Plaintiffs' first and second claims for relief.[1]

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

### I.   COMPLAINT ALLEGATIONS

On July 11, 2019, Plaintiffs filed their Complaint for declaratory relief, injunctive relief, and damages based on alleged First Amendment violations and under the Medicaid Act.  In their first claim for relief, Plaintiffs contend that Defendant State Controller's deduction of union dues violates their First Amendment rights to free speech and association, and that section 12301.6(i)(2), the statute authorizing State Controller to do so, is unconstitutional.  Compl., Doc. No. 1 at 17, ¶¶ 69-70.  In their second claim for relief, Plaintiffs allege that the State violated a section of the federal Medicaid Act, 42 U.S.C. § 1396a(a)(32) ("Section 32"), by withholding union dues from the paychecks of in-home supportive services workers, including Plaintiffs.  Compl., Doc. No. 1 at 17-19, ¶¶ 72-77.  Plaintiffs specifically contend that Section 32 requires direct payments to in-home service providers, and no payments are allowed to any other person or entity.  Compl., Doc. No. 1 at 18, ¶ 74.

Plaintiffs Alicia Quirarte, Nora Maya, Viet Le, Anh Le, and Jose Diaz are in-home service providers who work in various cities in Southern California.  Compl., Doc. No. 1 at 4, ¶¶ 10-14.  Defendant United Domestic Workers of America AFSCME Local 3930 ("Union") is their exclusive bargaining representative.  Compl., Doc. No. 1 at 6, ¶ 22; Union Motion for Judgment on the Pleadings,

---

[1] The State Defendants join in Defendant Union's motion for judgment on the pleadings, filed on December 13, 2019, and incorporates that motion by reference here.  *See* Defendant Union's Motion for Judgment on the Pleadings ("Motion for Judgment on the Pleadings"), Doc. No. 30.

1   Declaration of Matthew A. Maldonado in Support of Union Motion for Judgment

2   on the Pleadings ("Maldonado Decl."), Doc. No. 30-2 at 2, ¶ 3.  Plaintiffs allege

3   that they each signed union dues authorization agreements, and after signing those

4   agreements, resigned their union memberships and sought to have their dues

5   deductions cease.  Compl., Doc. No. 1 at 8, 9, 10, 11, ¶¶ 31-32, 37-38, 42, 48-49.

6   The Union honored Plaintiffs' resignations, and has since stopped deducting dues

7   from each Plaintiffs' paychecks; in the case of Plaintiff Alicia Quirarte, she has not

8   had dues deducted since the time that she resigned her membership.  Maldonado

9   Decl., Doc. No. 32-2 at 3-4, ¶ 10-14.

10  **II.   CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 12301.6(i)(2)**

11       The challenged portion of section 12301.6(i)(2), enacted as part of Assembly

12  Bill No. 2235, has been in effect since 2002, well before the *Janus* decision issued.[2]

13  2002 Cal. Legis. Serv. Ch. 1135 (AB 2235).  This statute only requires the State

14  Controller to deduct dues from the wages of in-home supportive service employees

15  "as directed" by the applicable agreement between their employer and their

16  collective bargaining representative.  Cal. Welf. & Inst. Code § 12301.6(i)(2).  State

17  law further provides that dues deductions are voluntary and public employees must

18  authorize them.  Cal. Gov't Code §§ 1152, 1153.

19  **III.   DEFENDANTS' RESPONSE**

20       Plaintiffs name Betty Yee, in her official capacity as California State

21  Controller ("State Controller") and United Domestic Workers of America

22  AFSCME Local 3930 ("Union") (collectively, "Defendants").  On August 23,

23  2019, Yee filed her Answer to the Complaint.  (ECF No. 13.)  Xavier Becerra, in

24  his official capacity as California Attorney General ("Attorney General"),

25  intervened by stipulated request of the parties, which was approved by this Court,

26  and filed an Answer to the Complaint in this matter to defend the constitutionality

27       [2] The subdivision was amended in 2018 to add the language "waiver personal
28  care services personnel;" the language pertaining to State Controller's deduction of
    union dues from employee wages has been in effect since 2002.

1 | of section 12301.6(i)(2) and address the allegations concerning the Medicaid Act.
2 | (Doc. Nos. 20, 20-1, 20-2.)

3 | **LEGAL STANDARD**

4 | Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the
5 | pleadings "after the pleadings are closed—but early enough not to delay trial."  Fed.
6 | R. Civ. P. 12(c).

7 | A motion for judgment on the pleadings "challenges the legal sufficiency of
8 | the opposing party's pleadings."  *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152,
9 | 1154-55 (E.D. Cal. 2006), aff'd, 277 Fed.Appx. 734 (9th Cir. 2008).  "A district
10 | court will render a 'judgment on the pleadings when the moving party clearly
11 | establishes on the face of the pleadings that no material issue of fact remains to be
12 | resolved and that it is entitled to judgment as a matter of law.'"  *Enron Oil Trading*
13 | *& Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997)
14 | (quoting *George v. Pacific - CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir.
15 | 1996).

16 | "All allegations of fact by the party opposing the motion are accepted as true,
17 | and are construed in the light most favorable to that party."  *Gen. Conference Corp.*
18 | *of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887
19 | F.2d 228, 230 (9th Cir. 1989); *Schuett v. FedEx Corp*., 119 F. Supp. 3d 1155, 1159
20 | (N.D. Cal. 2016).  "As a result, a plaintiff is not entitled to judgment on the
21 | pleadings when the answer raises issues of fact that, if proved, would defeat
22 | recovery."  *Seventh-Day Adventists Congregational Church*, 887 F.2d at 230.  A
23 | motion for judgment on the pleadings will not be granted unless it appears "beyond
24 | doubt that the [non-moving party] can prove no set of facts in support of his claim
25 | which would entitle him to relief."  *Enron Oil Trading & Transp. Co*., 132 F.3d at
26 | 529 (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996)); *Morgan*,
27 | 436 F. Supp. 2d at 1155.

28 |

1    When deciding a Rule 12(c) motion, courts may consider facts set forth in the

2    pleadings as well as facts that are contained in materials of which the court may

3    take judicial notice. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981

4    n.18 (9th Cir. 1999) (citation omitted); see also *Hebert Abstract Co. v. Touchstone*

5    *Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (a Rule 12(c) motion "is designed to

6    dispose of cases where the material facts are not in dispute and a judgment on the

7    merits can be rendered by looking to the substance of the pleadings and any

8    judicially noticed facts") (per curiam).

9                                     **ARGUMENT**

10   As a threshold matter, Plaintiffs' claims against State Defendants should be

11   dismissed because they do not present a justiciable controversy.  Plaintiffs do not

12   have a live claim for prospective relief because their dues deductions have ended

13   and there is no likelihood they will resume; to the extent that Plaintiffs seek

14   retrospective relief against the State Defendants, their claims are barred by the

15   Eleventh Amendment.

16   **I.     PLAINTIFFS CANNOT STATE A CONSTITUTIONAL CHALLENGE TO

17          CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 12301.6(i)(2)
            OR A CLAIM AGAINST STATE CONTROLLER, BECAUSE THEIR
            PURPORTED HARMS ARE NOT BASED ON ANY STATE ACTION, BUT ON

18          PRIVATE MEMBERSHIP AGREEMENTS WITH THE UNION**

19   Plaintiffs' challenge to the constitutionality of section 12301.6(i)(2) and their

20   allegations against State Controller for deducting dues pursuant to that section fail

21   as a matter of law, because their claimed injuries arise not from section

22   12301.6(i)(2) but from their private dues-authorization agreements with the Union,

23   a private party and non-State actor.

24   Plaintiffs bring this First Amendment challenge to section 12301.6(i)(2) and

25   against State Controller pursuant to 42 U.S.C. section 1983.  Compl., Doc. No. 1 at

26   15-17, ¶¶ 61-71.  But "[t]o state a claim under § 1983, a plaintiff must show that the

27   allegedly unconstitutional conduct is fairly attributable to the State." *Bain v. Cal.*

28   *Teachers Ass'n*, 156 F. Supp. 3d 1142, 1149 (C.D. Cal 2015) (citing *Caviness v.*

5

*Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)). "At bottom, the state action requirement serves to 'avoid[] imposing on the State, its agencies or officials, responsibility for the conduct for which they cannot fairly be blamed.'" *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (quoting *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 936 (1982)).

Here, State Controller is not "*responsible* for the specific conduct of which the plaintiff[s] complain"—the decision to enforce their private membership agreements with the Union—and so Plaintiffs' challenge to section 12301.6(i)(2) fails as a matter of law because they cannot show that the conduct at issue is itself a "state action." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original).

Courts employ a two-prong test to determine if challenged conduct is a state action:

> The first prong asks whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the state or by a person for whom the State is responsible. The second prong determines whether the party charged with the deprivation could be described in all fairness as a state actor.

*Naoko Ohno*, 723 F.3d at 994 (quoting *Lugar*, 457 U.S. at 937). Plaintiffs' challenge to section 12301.6(i)(2) and their challenge to State Controller's dues deductions pursuant to that section, do not satisfy either prong of the state action requirement.

**A.    The Union's Deduction of Dues Is Not Based on a Right or Privilege Created by the State**

As to the first prong of the "state action" analysis described in *Naoko Ohno*, the challenged conduct here did not result from any obligation created or imposed by State Controller in operating under section 12301.6(i)(2), but rather was the result of the Union's dues authorization agreements with each Plaintiff, which the Union determined to enforce.

1    Plaintiffs allege that section 12301.6(i)(2) is unconstitutional because it allows

2 for the Union's dues authorization policy and because it provides that State

3 Controller shall deduct dues from Plaintiffs' wages, "without clear and compelling

4 evidence that they waived their First Amendment rights" to refrain from doing so.

5 Compl., Doc. No. 1 at 15-17, ¶¶ 63-65, 68-69.  But the First Amendment, as

6 interpreted in *Harris v. Quinn*, 573 U.S. 616 (2014), and in *Janus*, only prohibits

7 public employers from compelling employees to subsidize union activities, facts

8 that have not been alleged here.  Further, "[a]ction taken by private entities with the

9 mere approval or acquiescence of the State is not state action."  *Caviness*, 590 F.3d

10 at 817 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)).

11 Indeed, the Supreme Court has noted that it "has never held that a State's mere

12 acquiescence in a private action converts that action into that of the State."  *Flagg*

13 *Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978) (finding that a plaintiff could not

14 state a section 1983 claim against the State of New York for enacting the New York

15 Uniform Commercial Code, which allowed a storage company to sell the plaintiff's

16 goods).

17    Here, Plaintiffs' purported injury stems from their dues authorization

18 agreements with the Union and the maintenance of dues deduction terms within

19 those agreements.  State Controller is not a party to any dues authorization

20 agreement, and Plaintiffs do not allege—nor could they—that section 12301.6(i)(2)

21 (or any other state law) dictated that Plaintiffs sign those agreements, or dictated the

22 terms of those agreements.

23    Nor can Plaintiffs point to State Controller's ministerial function of processing

24 their dues deductions as state actions that implicate constitutional protections.  The

25 State Controller does not determine whether to enforce the terms of the dues

26 deduction agreements.  As another district court has recently held in a similar dues-

27 deduction case, "Defendants' obligation to deduct fees in accordance with the

28 authorization 'agreements does not transform decisions about membership

7

1    requirements . . . into state action.'" *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1015

2    (W.D. Wash. Feb. 15, 2019), appeal docketed No. 19-35137 (9th Cir. Feb. 20,

3    2019) (quoting *Bain v. Cal. Teachers Ass'n*, No. 2:15-cv-02456-SVW-AJW, 2016

4    WL 6804921, at *7 (C.D. Cal. May 2, 2016)); *see also Delgado v. Smith*, 861 F.2d

5    1489, 1495-96 (11th Cir. 1988) (a state's ministerial approval of a voter initiative

6    did not constitute state action); *Cobb v. Saturn Land Co., Inc.*, 966 F.2d 1334, 1337

7    (10th Cir. 1992) ("[A]ctions of a county clerk, who merely accepted and recorded

8    the required lien materials prepared by Defendant and issued filing notices to

9    Plaintiff," were not state actions sufficient to invoke constitutional protection).

10   Plaintiffs' purported injury therefore arises solely from their contractual agreements

11   with the Union; they are not fairly attributable to any state action or any right or

12   privilege created by the State.

13        **B.    The Union Is Not a "State Actor"**

14        Even if Plaintiffs could satisfy the first prong of the state action test—and as

15   demonstrated above, they cannot—their constitutional challenge to the deduction of

16   dues on the basis of their private dues authorization agreements fails at the second

17   prong because the Union is not a state actor.  Here, "the party charged with the

18   deprivation"—in this case, the Union—is not a person "who may fairly be said to

19   be a state actor," where "'state actor' means an actor for whom a domestic

20   governmental entity is in some sense responsible." *Naoko Ohno*, 723 F.3d at 994

21   (quoting *Lugar*, 457 U.S. at 937).  The Supreme Court has articulated four tests to

22   determine whether a non-governmental entity's actions amount to state action: (a)

23   the public function test; (b) the joint action test; (c) the state compulsion test; and

24   (d) the governmental nexus test. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S.

25   Ct. 1921, 1928 (2019); *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52-58; *Naoko Ohno*,

26   723 F.3d at 995 (internal citations omitted).  The Union's actions—specifically, its

27   deduction of Plaintiffs' dues payments pursuant to the terms of their private dues

28

1  authorization agreements—fails to satisfy any of the four tests necessary to

2  establish the Union as a "state actor."

3       **1.  The "Public Function" Test**

4       Plaintiffs' allegations do not satisfy the "public function test," because state

5  law does not vest the Union with any governmental powers.  "Under the public

6  function test, 'when private individuals or groups are endowed by the State with

7  powers or functions governmental in nature, they become agencies or

8  instrumentalities of the State and subject to its constitutional limitations.'"  *Lee v.*

9  *Katz*, 276 F.3d 550, 554-55 (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)).

10  "To satisfy the public function test, the function at issue must be both traditionally

11  and exclusively governmental."  *Lee*, 276 F.3d at 555 (quoting *Rendell-Baker v.*

12  *Kohn*, 457 U.S. 830, 842 (1982)).  "'[V]ery few' functions fall into that category."

13  *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1929.

14       Here, the Union is not alleged to have been endowed by the State "with power

15  or functions governmental in nature."  *Florer v. Congregation Pidyon Shevuyim,*

16  *N.A.*, 639 F.3d 916, 924 (9th Cir. 2011).  The statute challenged by Plaintiffs—

17  section 12301.6(i)(2)—does not vest the Union with governmental authority.

18  Rather, it provides only that State Controller is to deduct dues from represented

19  employees pursuant to an agreement between their employer and their labor

20  representative.  The "relevant function" in this case—the imposition of a dues

21  requirement for employees who choose union membership, and the enforcement of

22  contract terms governing that requirement—"has not traditionally and exclusively

23  been performed by government."  *Manhattan Cmty. Access Corp.*, 139 S. Ct. at

24  1929 (collecting cases rejecting "public function" challenges to private conduct);

25  *see also Lee*, 276 F.3d at 555.  Rather, they are routine matters of private contract

26  that arise out of union membership agreements.

27

28

### 2.  The "Joint Action" Test

Nor have Plaintiffs alleged any facts in support of their conclusory allegations that the State Controller and the Union acted "jointly and under color of state law" to deprive Plaintiffs of their constitutional rights so as to satisfy the "joint action test." Compl., Doc. No. 1 at 15, 16-17, ¶¶ 62, 68-69.  For purposes of this test, a "'[j]oint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party." *Naoko Ohno*, 723 F.3d at 996.  No such facts are alleged here.    Instead, Plaintiffs only make the conclusory allegation that the State Controller, "in coordination with" or "in concert with" the Union, deducts dues from employees' paychecks. Compl., Doc. No. 1 at 7, ¶¶ 25, 28.  But they allege no facts showing that the State Controller has acted in any way to direct the Union to enforce its own private membership agreements.  The Complaint focuses on the language in those agreements, asserting that they "do not contain language informing [employees] of their First Amendment right not to subsidize" the Union.  Compl., Doc. No. 1 at 7, ¶ 27.  But there are no facts alleging that the State Controller affirmed, authorized, encouraged, or facilitated the contents of those agreements, nor are there any alleged facts that the Union's decision to enforce those agreements was made with any input by the State Controller.  Thus, Plaintiffs cannot show that the State Controller "so far insinuated itself into a position of interdependence with" the Union "that it must be recognized as a joint participant in the challenged activity." *Naoko Ohno*, 723 F.3d at 996 (internal citations omitted).  Rather, the Complaint alleges that the Union determined that union dues would continue to be deducted from each Plaintiff's paychecks pursuant to their dues authorization agreements.[3] Compl., Doc. No. 1 at 8, 9, 11-12, ¶¶ 32, 38, 49.  The State Controller is not alleged to have had any role in the Union's determination to enforce those agreements.

---

[3] This is with the exception of Plaintiffs Viet Le and Anh Le, who, Plaintiffs allege, never heard back from the Union concerning their dues deductions.  Compl., Doc. No. 1 at 10, ¶ 42.

Nor do the allegations concerning the State Controller's role in facilitating the deductions themselves amount to "significant assistance" of the Union.  *See Naoko Ohno*, 723 F.3d at 996 (finding that a district court's enforcement order of procedures established by a law could not be said "to provide 'significant assistance' to the *underlying* acts that the [appellant] contends constituted the core violation of its First Amendment rights.") (emphasis in original).  There are no allegations showing that the State Controller's administration of dues deductions significantly assisted the Union in setting the conditions of the dues authorization agreements, and so that administration does not amount to a joint action that would make the Union a state actor.

### 3.  The "State Compulsion" Test

The Complaint also does not allege that the State Controller has exercised any coercive power over the Union.  Under the "state compulsion" test, "[a] state may be responsible for a private entity's actions if 'it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"  *Caviness*, 590 F.3d at 816 (quoting *Blum*, 457 U.S. at 1004).

The Complaint does not allege that State Controller played any role whatsoever in the creation of the agreements' terms for dues deduction.  Nor are there any allegations showing that State Controller encouraged or otherwise coerced the Union to enforce the dues agreements.  And because the State is also not alleged to have played any role in the execution of the dues authorization agreements by Plaintiffs, or their enforcement by the Union, Plaintiffs cannot show that the Union is a state actor under the "state compulsion" test.

### 4.  The "Government Nexus" Test

Finally, for many of the reasons already noted above, Plaintiffs' claims do not satisfy the "governmental nexus" test.  "Under the governmental nexus test, a private party acts under color of state law if 'there is a sufficiently close nexus

11

1    between the State and the challenged action of the regulated entity so that the action

2    of the latter may be fairly treated as that of the State itself.'"  *Nakao Ohno*, 723

3    F.3d at 995 n.13 (quoting *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th

4    Cir. 1991) (internal citations omitted)).

5        Here, the Union's enforcement of voluntarily-signed dues authorization

6    agreements cannot be treated as an act of the State itself.  As noted above, section

7    12301.6(i)(2) only requires the State Controller to deduct dues from the wages of

8    employees "as directed" by the applicable agreement between their employer and

9    their collective bargaining representative.  Cal. Welf. & Inst. Code § 12301.6(i)(2).

10   And state law further provides that dues deductions are voluntary and public

11   employees must authorize them.  Cal. Gov't Code §§ 1152, 1153.  The Complaint

12   alleges no facts to show that the Union's decisions to enforce the dues deduction

13   provisions in each agreement were made with any input from the State.  "Courts

14   have regularly rejected attempts to find state action in the internal decisions of

15   unions even when they are given exclusive bargaining authority by state law."  *Bain*

16   *v. Cal. Teachers Ass'n*, No. 2:15-cv-02465-SVW-AJW, 2016 WL 6804921 at *7

17   (C.D. Cal. May 2, 2016); *cf. Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1931-32

18   (holding that a state's extensive regulation of a private utility does not render the

19   utility a state actor regardless of whether the state had authorized the utility to

20   provide service to the community, or whether the utility was the only entity

21   providing such service).

22       Moreover, the Union's deduction of Plaintiffs' dues does not create the

23   requisite governmental nexus.  In *Bain*, the court held that the "government's

24   ministerial obligation to deduct dues" for union members "does not transform

25   decisions about membership requirements into state actions."  2016 WL 6804921 at

26   *7 (citing *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d

27   811, 817 (7th Cir. 2009)).  And in *Kidwell v. Transp. Commc'ns Int'l Union*, 946

28   F.2d 283, 298 (4th Cir. 1991), the court found that the government could not be

held responsible for a union's membership criteria, because the governmental authority conferred upon the union did not specifically authorize or require the action complained of.

Similarly here, state law does not prescribe any specific action that the Union should have taken in either creating or enforcing a dues deduction requirement as part of its membership agreements with its members and former members. Therefore, Plaintiffs' allegations regarding the Union's enforcement of its own dues deduction provisions do not establish the governmental nexus necessary to invoke constitutional scrutiny.  Compl., Doc No. 1 at 8, 9, 11-12, ¶¶ 32, 38, 49.

Because Plaintiffs have not alleged, and cannot allege, that the Union is a state actor under any of the four applicable tests, they fail to meet the second-prong of the "state action" test.  Accordingly, they cannot show government involvement sufficient in character and impact that would make the State responsible for the alleged harm caused by the deduction of union dues from their wages.  *See Naoko Ohno*, 723 F.3d at 937-42.  Their constitutional challenge to section 12301.6(i)(2), and their allegation that State Controller violated their First Amendment rights by deducting dues from their salary pursuant to that section, must be dismissed.

## II.  PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR ILLEGAL DUES SKIMMING UNDER THE MEDICAID ACT

### A.  The Eleventh Amendment Bars Plaintiffs' Medicaid Act Claim Against the State

The Eleventh Amendment states that "[t]he judicial power . . . shall not . . . extend to any suit in law or equity . . . against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."  U.S. Const., Amend. XI.  The immunity provided by the Eleventh Amendment also prohibits lawsuits in federal court against a state by the state's own citizens.  *Pennhurst State Sch. Hosp. v. Halderman*, 465 US 89, 100 (1984); *see also Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its

13

instrumentalities, or its agencies.")  The Complaint alleges that the State of California has violated the Medicaid Act by withholding union dues from Plaintiffs' paychecks.  Compl., Doc. No. 1 at 18-19, ¶ 76.  Plaintiffs seek declaratory relief against the State Controller; they also generally request injunctive relief and compensatory damages.[4]  Compl., Doc. No. 1 at 20.  But this claim against the State Controller is barred by the Eleventh Amendment because the State Controller has Eleventh Amendment immunity, and the exception articulated under *Ex Parte Young* does not apply here.  *Ex parte Young*, 209 U.S. 123 (1908).

The *Ex parte Young* exception allows for a lawsuit against a state official to be prosecuted in federal court if the claim is limited to an injunction against the official preventing him from enforcing an unconstitutional state law.  *Ex parte Young*, 209 U.S. at 166.  But Plaintiffs are not alleging wrongful enforcement of an unconstitutional state law.  Plaintiffs allege instead that Defendants are running afoul of Section 32; their allegation is based on a new interpretation of Section 32, which is currently the subject of a lawsuit by multiple states.[5]  *Ex parte Young* does not apply, and Plaintiffs' claims against the State Controller and request for relief, are barred under the Eleventh Amendment.

## B.    Plaintiffs Lack Standing to Seek Relief Under the Medicaid Act

Even if the Eleventh Amendment did not bar Plaintiffs' claim for violation of the Medicaid Act, Plaintiffs' request for prospective injunctive relief is not

---

[4] Plaintiffs' requests for injunctive relief and compensatory damages do not specify whether it is to remedy their allegations concerning section 12301.6(i)(2) or Section 32; for the purposes of this brief, State Defendants assume the requests are to remedy both allegations.

[5] In 2014, the Center for Medicare and Medicaid Services (CMS) issued a regulation, 42 C.F.R. §447.10(g)(4), confirming its long-standing interpretation that states are not prohibited from making payments to third parties on behalf of individual providers for health benefits, skills training, and "other benefits customary for employees," where the individual is a type of practitioner for whom Medicaid is the primary revenue source.  79 Fed. Reg. 2948, 2949 (Jan. 16, 2014). On May 6, 2019, CMS withdrew the 2014 amendment.  The States of California, Oregon, Connecticut, Massachusetts, and Washington are currently challenging CMS's May 6, 2019 action in the Northern District.  *See California et al. v. Azar et al.*, 19-cv-02552 (filed May 13, 2019).

14

justiciable, because it is void for lack of standing.  To have standing to bring a constitutional challenge, Plaintiffs must allege that they suffered an injury in fact, i.e., "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  That interest must be: (a) "concrete and particularized;" (b) "actual or imminent, not 'conjectural' or 'hypothetical;'" and (c) capable of being "redressed by a favorable decision." *Id*. at 560-561 (internal citations omitted).

Here, Plaintiffs are no longer members of their respective unions, and are no longer having any union dues deducted from their paychecks.  Maldonado Decl., Doc. No. 32-2 at 3-4, ¶¶ 10-14.  They are not likely to suffer any similar alleged injury in the future, as they have alleged no "concrete, particularized" plans to rejoin the Union, nor do they appear likely to do so.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).  Thus, as a court recently held in a similar lawsuit alleging the same violation of the Medicaid Act against the State Controller, "the allegedly wrongful behavior cannot reasonably be expected to recur with respect to the named plaintiffs." *Aliser v. SEIU California,* 2019 WL 6711470 at *9 (N.D. Cal. Dec. 10, 2019) (Chhabria, J.), citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  Plaintiffs' claim for prospective relief—specifically an injunction preventing the State Controller from deducting any union payments—is void for lack of standing because they are no longer Union members, are no longer having dues deducted, and therefore will not have any further dues deducted from their paychecks.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (noting that pending damages suit did not confer standing for prospective relief when there is no "real or immediate threat that the plaintiff will be wronged again").

For this reason, the Court should dismiss Plaintiffs' request that the Court enjoin the State Controller from deducting dues.

### C.   The Medicaid Act Provision Challenged Here Does Not Create a Private Right of Action Under 42 U.S.C. § 1983

Plaintiffs' claims for retrospective relief—compensatory damages—should also be dismissed because the Medicaid Act provision at issue in this matter does not provide for a private right of action.  The Complaint alleges that the State Controller violated Plaintiffs' rights under Section 32.  Compl.,, Doc. No. 1 at18-19, ¶¶ 72-77.[6]  To state a claim for relief, Plaintiffs must demonstrate that Section 32 provides a private right of action either under its own terms or as implied through Congressional intent.  *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008) ("Where a federal statute does not explicitly create a private right of action, a plaintiff can maintain a suit only if Congress intended to provide the plaintiff with a[n implied] private right of action.").  Without such a private right of action, Plaintiffs' allegation fails as a matter of law.

Here, Section 32 does not confer any privately enforceable federal right—either express or implied—on Plaintiffs.  Rather, as courts have recognized, Section 32 was enacted to prevent healthcare providers from assigning their entitlement to reimbursement (from the state) to a third party.  *Michael Reese Physicians &*

---

[6] Plaintiffs' Section 32 quotation alleged in paragraph 74 is misleading. Specifically, Plaintiffs omit material language from the quotation that shows Section 32 to be one of various required provisions for State plans for medical assistance under subsection (a) of § 1396a.  A non-misleading quotation would clearly show that "Section 32" does not prohibit conduct, contrary to Plaintiffs' allegations:

**(a)  Contents**

A *State plan for medical assistance must—*

. . .

(32) *provide* that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise; except that [list of exceptions in which payments could be directed to someone other than medical provider]

42 U.S.C. § 1396a(a)(32) (italics added).

1 | *Surgeons, S.C. v. Quern*, 606 F.2d 732, 734 (7th Cir. 1979), *adopted en banc*, 625

2 | F.2d 764 (7th Cir. 1980), *cert. denied*, 449 U.S. 1079 (1981).  Specifically,

3 | Congress amended Section 1396a(a) to stop the "factoring" of Medicaid

4 | receivables.  *Danvers Pathology Assocs., Inc. v. Atkins*, 757 F.2d 427, 428–31 (1st

5 | Cir. 1985) (Breyer, J.) (discussing the legislative history of § 1396a(a)(32)).[7]

6 |      Nor does Section 32 provide any private right of action through 42

7 | U.S.C. § 1983.  "Section 1983 is a procedural device for enforcing constitutional

8 | provisions and federal statutes; the section does not create or afford substantive

9 | rights."  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  "[T]he

10 | requirements for relief under section 1983 have been articulated as:  (1) a violation

11 | of rights protected by the Constitution or created by federal statute, (2) proximately

12 | caused (3) by conduct of a 'person' (4) acting under color of state law.  [Citations]."

13 | *Id.*  "Section 1983 speaks in terms of 'rights, privileges, or immunities,' not

14 | violations of federal law."  *Golden State Transit Corp. v. Los Angeles*, 493 U.S.

15 | 103, 106 (1989).  A plaintiff seeking to sue under 42 U.S.C. § 1983 "must assert the

16 | violation of a federal *right*, not merely a violation of federal *law*."  *Blessing v.*

17 | *Freestone*, 520 U.S. 329, 340 (1997) (italics in original; citation omitted).

18 |      The Supreme Court has "made clear that unless Congress speaks with a clear

19 | voice, and manifests an unambiguous intent to confer individual rights, federal

20 | funding provisions provide no basis for private enforcement by § 1983."  *Gonzaga*

21 | *Univ. v. Doe*, 536 U.S. 273, 280 (2002) (internal quotations omitted).  For a statute

22 | to confer such a right, "its text must be 'phrased in terms of the person benefitted.'"

23 | *Id.* at 284 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 692 n. 13

24 | (1979).  After *Gonzaga*, it is not enough that "the plaintiff falls within the general

25 | zone of interest that the statute is intended to protect" to find a privately enforceable

26 | right.  *Id.* at 283.

27 |

28 |      [7] Here, the State's conduct complained of by Plaintiffs is not even encompassed by the "anti-factoring" prohibition of the Medicaid Act.

1   Therefore, as one district court already has observed regarding a nearly

2   identical allegation in a similar post-*Janus* case:

> 3   [Section 32] doesn't give the plaintiffs a federal right to sue under the
>     Medicaid Act.  42 U.S.C. § 1396a(a) lists contents that a state Medicaid
> 4   plan must contain.  The Secretary of Health and Human Services is
>     authorized to determine whether states are complying with the
> 5   requirements of section 1396a, and to withhold Medicaid funding from
>     noncompliant states . . .Section 32 does not create an individually
> 6   enforceable right.

7   *Aliser v. SEIU California*, 2019 WL 6711470 at *9-10; *see also Transitional Servs.*

8   *of N.Y. for Long Island, Inc. v. N.Y.S. Office of Mental Health*, 91 F. Supp. 3d 438,

9   444 (E.D.N.Y. 2015) ("[Section 32] does not require the state to issue any payment

10  at all; instead the provision places restrictions on who can receive such a payment.

11  In other words, there is no rights-conferring language in the provision.").

12      In sum, Section 32 does not create a privately-enforceable right of action

13  under its own terms or through section 1983.  Therefore, Plaintiffs' claims against

14  State Controller are not cognizable under any law.

15                          **CONCLUSION**

16      For the foregoing reasons, State Defendants respectfully request that this

17  Court grant their motion for judgment on the pleadings.

18

19  Dated:  December 27, 2019                Respectfully Submitted,

20                                           XAVIER BECERRA
                                             Attorney General of California
21                                           MARK R. BECKINGTON
                                             Supervising Deputy Attorney General

22

23

24                                           *s/ Lara Haddad*
                                             LARA HADDAD
25                                           Deputy Attorney General
                                             *Attorneys for Attorney General of*
26                                           *California and California State*
                                             *Controller*

27

28

# CERTIFICATE OF SERVICE

Case Name:   **Quirarte, Alicia et al. v. United**            Case
             **Domestic Workers AFSCME**            No..   **19-cv-1287-CAB-KSC**
             **Local 3930, et al.**

I hereby certify that on <u>December 27, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CALIFORNIA STATE CONTROLLER'S AND ATTORNEY GENERAL OF CALIFORNIA'S MOTION FOR JUDGMENT ON THE PLEADINGS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>December 27, 2019</u>, at Los Angeles, California.

|                          |                          |
|--------------------------|--------------------------|
| Beth L. Gratz            | *s/ Beth L. Gratz*       |
| Declarant                | Signature                |

54002784.docx