XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
LARA HADDAD
Deputy Attorney General
State Bar No. 319630
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6250
  Fax:  (916) 731-2124
  E-mail:  Lara.Haddad@doj.ca.gov
*Attorneys for Defendants Attorney General
of California and California State Controller*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

EDWARD J. SCHWARTZ U.S. COURTHOUSE

| | |
|---|---|
| **ALICIA QUIRARTE; NORA MAYA; ANH LE; VIET LE; and JOSE DIAZ,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED DOMESTIC WORKERS AFSCME LOCAL 3930, a labor organization; and BETTY YEE, in her official capacity as State Controller of the State of California,**<br><br>Defendants,<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of California,**<br><br>Defendant-Intervenor. | Case No. 19-cv-1287-CAB-KSC<br><br>**REPLY OF DEFENDANTS CALIFORNIA STATE CONTROLLER AND ATTORNEY GENERAL IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENTS UNLESS SEPARATELY ORDERED BY THE COURT**<br><br>Dept:  4C<br>Judge:  The Honorable Cathy Ann Bencivengo<br>Trial Date:  None Set<br>Action Filed: July 11, 2019 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 1

I.   Plaintiffs Cannot State a § 1983 Claim Challenging the Constitutionality of California Welfare and Institutions Code section 12301.6(i)(2) ............................................................................. 1

   A.   State Defendants' Deduction of Dues is Ministerial and Does Not Rise to State Action .................................................... 1

   B.   UDW Is Not a State Actor ............................................................ 4

      1.   Plaintiffs Have Alleged No Facts Demonstrating that UDW Acted Jointly With the State to Cause Plaintiffs' Harm ............................................................. 4

      2.   Plaintiffs Cannot Show that UDW Meets the Public Function Test ............................................................... 6

      3.   The State Has Not Compelled UDW's Actions, Nor Is There A Government Nexus Between the State and UDW ...................................................................... 6

II.   Plaintiffs' Medicaid Act Claim Fails as a Matter of Law ................... 7

   A.   The Eleventh Amendment Bars Plaintiffs' Medicaid Act Claims Against the State ............................................................ 7

   B.   Plaintiffs Do Not Have a Private Right of Action to Enforce Section 32 of the Medicaid Act .................................... 9

CONCLUSION ................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

CASES

*AHS Tulsa Regional Medical Center v. Fogarty*
   No. 07-CV-338, 2007 WL 3046441 (N.D. Okla. Oct. 16, 2007) ...................... 10

*Aliser v. SEIU California*
   No. 19-cv-00426-VC, 2019 WL 6711470 (N.D. Cal. Dec. 10, 2019) ............... 10

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ................................................................................5

*Bain v. Cal. Teachers Ass'n*
   156 F. Supp. 3d 1142 (C.D. Cal. 2015) ................................................. 1

*Bain v. Cal. Teachers Ass'n*
   No. 2:15-cv-02456-SVW-AJW, 2016 WL 6804921 (C.D. Cal. May
   2, 2016) ................................................................................2, 7

*Belgau v. Inslee*
   359 F. Supp. 3d 1000 (D.C. Wash. 2019) ........................................ 2, 6

*Blum v. Yaretsky*
   457 U.S. 991 (1982) ................................................................. 1, 3

*Buller v. Buechler*
   706 F.2d 844 (8th Cir. 1983) .............................................................3

*California et al. v. Azar et al.*
   No. 19-cv-02552 (N. D. Cal. 2019) ..................................................7

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*
   590 F.3d 806 (9th Cir. 2010) ..........................................................6

*Franks v. Bowman Transportation Co.*
   424 U.S. 747 (1976) ......................................................................8

*Gerstein v. Pugh*
   420 U.S. 103 (1975) ......................................................................8

*Green v. Mansour*
   474 U.S. 64 (1985) .......................................................................8

ii

1

2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

3

4

*Harris v. Quinn*
   573 U.S. 616 (2014) .................................................... 3

5

6

*Hebert Abstract Co. v. Touchstone Props., Ltd.*
   914 F.2d 74 (5th Cir. 1990) ........................................ 5

7

8

*Heliotrope Gen., Inc. v. Ford Motor Co.*
   189 F.3d 971 (9th Cir. 1999) ...................................... 5

9

*Hudson v. Chicago Teachers Union Local No. 1*
   743 F.2d 1187 (7th Cir. 1984) .................................... 5

10

11

*Jackson v. Galan*
   868 F.2d 165 (5th Cir. 1989) ...................................... 3

12

13

*Janus v. AFSCME*
   138 S Ct. 2448 (2018) ......................................... 3, 5, 6

14

15

*Kennerly v. United States*
   721 F.2d 1252 (9th Cir. 1983) .................................... 3

16

17

*Mathis v. Pacific Gas and Elec. Co.*
   75 F.3d 498 (9th Cir. 1996) ....................................... 4

18

19

*Mich. Corrections Org. v. Mich. Dep't of Corrections*
   774 F.3d 895 (6th Cir. 2014) ...................................... 8

20

21

*Naoko Ohno v. Yuko Yasuma*
   723 F.3d 984 (9th Cir. 2013) ................................. 2, 4, 6

22

*Planned Parenthood Arizona, Inc. v. Betlach*
   727 F.3d 960 (9th Cir. 2013) ...................................... 9

23

24

*Sosna v. Iowa*
   419 U.S. 393 (1975) .................................................. 8

25

26

*Transitional Services of N.Y. for Long Island, Inc. v. N.Y.S. Office of
   Mental Health*
   91 F. Supp. 3d 438 (E.D.N.Y. 2015) ........................ 8, 10

27

28

State Defendants' Reply ISO Motion for Judgment on the Pleadings (19-cv-1287-CAB-KSC)

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3
4
*Tsao v. Desert Palace, Inc.*
    698 F.3d 1128 (9th Cir. 2012) ................................................................. 5

5
6
*Tulsa Professional Collection Services, Inc. v Pope*
    485 U.S. 478 (1988) ...................................................................... 4, 5

7
**STATUTES**

8
9
10
42 U.S.C.
    § 1396a(a)(32) .......................................................................... 9, 10
    § 1936a(a)(23) ............................................................................... 9
    § 1983 ........................................................................... 1, 2, 8, 9

11
12
13
California Government Code
    § 1152 .................................................................................... 2
    § 1153(a) ............................................................................ 2, 3, 4
    § 3502 .................................................................................... 2

14
15
California Welfare and Institutions Code
    § 12301.6(i)(2) .................................................................. 1, 2, 5, 7

16
17
Medicaid Act
    § 32 .............................................................................. 7, 8, 9, 10

18
**CONSTITUTIONAL PROVISIONS**

19
First Amendment .......................................................................... 2, 7

20
Eleventh Amendment .................................................................. 1, 7, 10

21
22
**COURT RULES**

23
Fed. R. Civ. Proc. 12(c) ................................................................... 5

24
**OTHER AUTHORITIES**

25
26
42 C.F.R.
    § 447.10(g)(4) ............................................................................ 7

27
79 Fed. Reg. 2948, 2949 (Jan. 16, 2014) ................................................... 7

28

iv

**INTRODUCTION**

Plaintiffs' claims against State Defendants fail because their alleged injury—the continued deduction of union dues from their paychecks after their membership resignation—did not result from any state action, either on the part of the State Controller or pursuant to any state law.  Plaintiffs' Medicaid Act claim separately fails because the Eleventh Amendment bars their claim against the State; Plaintiffs lack standing to bring a constitutional challenge against the State Controller, given their resignations from UDW and the fact that their alleged injuries are unlikely to recur in the future; and because medical providers such as these employees do not have the right to privately enforce the Act's anti-factoring provisions as they attempt to do so here.  Because no claim against the State Defendants has been stated, or can be stated, their Motion for Judgment on the Pleadings should be granted in its entirety.

**ARGUMENT**

**I.    PLAINTIFFS CANNOT STATE A § 1983 CLAIM CHALLENGING THE CONSTITUTIONALITY OF CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 12301.6(i)(2)**

**A.    State Defendants' Deduction of Dues is Ministerial and Does Not Rise to State Action**

As argued in State Defendants' Motion for Judgment on the Pleadings, Plaintiffs' constitutional challenge to California Welfare and Institutions Code section 12301.6(i)(2) fails as a matter of law, because neither that law nor the State Controller are responsible for the conduct of which Plaintiffs complain.  *See Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982).   To state a claim under 42 U.S.C. § 1983, the conduct that is alleged to be unconstitutional must be "fairly attributable" to the State.  *Bain v. Cal. Teachers Ass'n*, 156 F. Supp. 3d 1142, 1149 (C.D. Cal. 2015) (citing *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)).  Here, the sole source of Plaintiffs' injuries stems from a private action: UDW's decision to enforce the terms of Plaintiffs' dues authorization agreements,

1

which Plaintiffs were not required by law to sign, *see* Cal. Gov't Code §3502, and which the State Controller neither drafted nor was a party to.  Plaintiffs cannot meet the state action requirement as applied by the Ninth Circuit.  *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013).   The only actions the State Controller is alleged to have taken, as authorized by state law, is the processing of dues deductions from certain employees' paychecks, a ministerial act that does not rise to the level of state action such that would confer standing as required in an action alleging a violation of 42 U.S.C § 1983.  *See Bain v. Cal. Teachers Ass'n*, No. 2:15-cv-02456-SVW-AJW, 2016 WL 6804921 at *7 (C.D. Cal. May 2, 2016) ("The government's ministerial obligation to deduct dues for members . . . under a collective bargaining agreement does not transform decisions about membership requirements into state actions") (internal citations omitted); *see also Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1015 (D.C. Wash. 2019), appeal docketed No. 19-35137 (9th Cir. Feb. 20, 2019).  The deduction of dues pursuant to authorization agreements voluntarily entered into does not amount to state action as required by a section 1983 claim.

In their response brief, Plaintiffs allege that the State "scheme" created by section 12301.6(i)(2) is the product of state action because it provides for the deduction of union dues from employees "who have not waived their First Amendment right to refrain from subsidizing union speech."  Plaintiffs' Response to State Defendants' Motion for Judgment on the Pleadings (ECF No. 35) (Plaintiffs' Opp.) at 6-7.  But section 12301.6(i)(2) only requires the State Controller to make authorized dues deductions from the wages of IHSS providers.  *See* Cal. Gov. Code §§ 1152, 1153.  And section 12301.6(i)(2) does not authorize the State Controller to take any other action with respect to dues deductions, including to set the deduction amounts or the terms of the dues authorization agreements.  That the State Controller adjusts wages in accordance with a dues

2

1    authorization agreement "does not render it *responsible* for those actions." *Blum*,
2    457 U.S. at 1005 (emphasis in original).

3        Plaintiffs draw analogies to multiple cases concerning wage garnishment and
4    attachment schemes for the principle that the processing of union dues from
5    employees' paychecks is state action.  Plaintiffs' Opp. at 7-10, citing *Lugar v.*
6    *Edmondson Oil Co.*, 457 U.S. 922, 939-42 (1982); *Kennerly v. United States*, 721
7    F.2d 1252, 1257-58 (9th Cir. 1983); *Jackson v. Galan*, 868 F.2d 165, 167-68 (5th
8    Cir. 1989); *Buller v. Buechler*, 706 F.2d 844, 848 (8th Cir. 1983).  Those cases,
9    however, concern the involuntary garnishment of wages by the State, versus the
10   case here, which involves the *voluntary* deduction of union dues, as authorized by
11   Plaintiffs themselves.

12       To that end, Plaintiffs' reliance on *Harris v. Quinn*, 573 U.S. 616 (2014), and
13   *Janus v. AFSCME*, 138 S Ct. 2448 (2018), for the proposition that the deduction of
14   union *membership* dues is tantamount to state action is misplaced.  See Plaintiffs'
15   Opp. at 5-6.  Those cases dealt with mandatory agency fees that state law required
16   *non*members to pay.  In this case, state law does not require that any employee join
17   a union or authorize union dues, and the State Controller only deducts dues from
18   union members that have authorized those dues deductions.

19       Finally, Plaintiffs contend that the State Controller must have had a role in the
20   authorship of the dues authorization agreements because, according to the language
21   of California Government Code section 1153(a), "'[a]ll requests [for dues
22   deductions] shall be made *on forms approved by the Controller*.'"  Plaintiffs' Opp.
23   at 10, n. 4 (emphasis in brief).  But Plaintiffs omit pertinent language: section
24   1153(a) reads in full, "[The Controller shall] [m]ake, cancel, or change a deduction
25   at the request of the person or organization authorized to receive the deduction or
26   reduction.  All requests shall be made on forms approved by the Controller."  Cal.
27   Gov't Code § 1153(a).  Thus, all requests to the Controller regarding changes to
28   dues deductions by the person or organization authorized to receive the dues

1    deductions—in this case, UDW—must be on forms approved by the Controller.

2    Section 1153(a) says nothing about the approval of union's dues authorization form

3    that its *members* sign, as Plaintiffs erroneously imply.

4        **B.    UDW Is Not a State Actor**

5        Just as the ministerial processing of dues deductions by the State Controller

6    does not rise to the level of state action, UDW's decision to enforce its voluntary

7    dues authorization agreements does not make it a state actor under any of four state

8    action tests:[1] joint action; public function; state coercion; and government nexus.

9    *Naoko Ohno*, 723 F.3d at 994.

10        **1.    Plaintiffs Have Alleged No Facts Demonstrating that UDW**
              **Acted Jointly With the State to Cause Plaintiffs' Harm**

11

12       For a non-governmental entity to have jointly acted with the State such that its

13   actions make the entity a state actor, the government must have "insinuated itself

14   into a position of interdependence" with that entity.  *Naoko Ohno*, 723 F.3d at 996.

15   The action must be of a type that the government "affirms, authorizes, encourages,

16   or facilitates unconstitutional conduct through its involvement with a private party."

17   *Id.*  A private entity is only liable under this theory if the challenged actions are

18   "inextricably intertwined with those of the government."  *Mathis v. Pacific Gas and*

19   *Elec. Co.*, 75 F.3d 498, 503-504 (9th Cir. 1996) (citing *Collins v. Womancare,* 878

20   F.2d 1145, 1154 (9th Cir. 1989)).  For the same reasons explained above and in

21   State Defendants' Motion for Judgment on the Pleadings, Plaintiffs cannot show

22   that the State Controller jointly acted with UDW to draft or enforce the dues

23   deduction provisions that UDW's members voluntarily signed.

24       Plaintiffs cite to *Tulsa Professional Collection Services, Inc. v Pope*, 485 U.S.

25   478, 486 (1988), for the principle that state action exists where private parties make

26   use of state procedures "'with the overt, significant assistance of state officials.'"

27   ───────────────────

28       [1] These tests are described in detail in State Defendants' Motion for
     Judgment on the Pleadings.

Plaintiffs' Opp. at 11.  But that case involved the requirements set by an Oklahoma probate court before the statute of limitations for a creditor's claim begins to run. *Tulsa Professional Collection Services*, 485 U.S. at 479.  There, the Court found that the probate's court involvement—and the fact that without its involvement, a statute of limitations would not run—amounted to state action so that it implicated the Due Process Clause.  *Id.* at 486-87.  Here, by contrast, Plaintiffs informed UDW that they wished to revoke their dues authorizations, and UDW—not the State Controller—informed Plaintiffs what actions they must take, and within what timeframe, in order for their revocations to be effective, per their voluntarily-signed dues authorization agreements.

Plaintiffs can only point to the terms of section 12301.6(i)(2) as evidence of State "assistance" to UDW.[2]  Plaintiffs' Opp. at 11-12.  This does not, contrary to Plaintiffs' assertion, rise to the level of state action set forth in *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012), *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187 (7th Cir. 1984), or *Janus*.  Plaintiffs' Opp. at 12-13.  *Tsao* concerned a private casino that was designated by the state to issue citations to individuals to appear in state court, which the court found was no different than the citations issued by the police.  698 F.3d at 1140.  *Hudson* concerned the use of mandatory agency fees on political activities.  743 F.2d at 1191.  *Janus* likewise concerned mandatory agency fees.  The instant case does not involve mandatory agency fees required by the State, nor does it involve UDW acting as a quasi-police force as the casino in *Tsao*.  These cases which Plaintiffs cite do not apply here.

---

[2] Plaintiffs contend that the Complaint's allegations that the State Controller coordinates with UDW and public authorities to deduct dues "must be accepted as true."  Plaintiffs' Opp. at 11.  But the Court need not accept a complaint's mere conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-680 (2009).  When deciding a Rule 12(c) motion, courts may consider facts set forth in the pleadings as well as facts that are contained in materials of which the court may take judicial notice.  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (citation omitted); see also *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

### 2. Plaintiffs Cannot Show that UDW Meets the Public Function Test

Nor does the Union meet the "public function test," because UDW has not been vested by the State with any powers or functions that are "traditionally reserved to the government." *Naoko Ohno*, 723 F.3d at 996. The Union was not exercising traditional government powers when it entered private membership agreements with Plaintiffs; it was functioning as a union. *See Belgau II*, 359 F. Supp. 3d at 1013. Plaintiffs nevertheless contend that UDW is performing a public function because "the State has outsourced to UDW its constitutional responsibility" to determine if employees consent to the dues deduction under *Janus*. Plaintiffs' Opp. at 13. But as noted above, *Janus* applies only to laws requiring mandatory agency fee deductions, not purely voluntary dues deduction agreements entered into between two private parties. There is no "constitutional responsibility" for the State to police such purely private agreements.

### 3. The State Has Not Compelled UDW's Actions, Nor Is There A Government Nexus Between the State and UDW

State Defendants have not exercised any coercive power over the Union so that the Union's actions "must in law be deemed to be that of the State." *Caviness*, 590 F.3d at 816 (quoting *Blum*, 457 U.S. at 1004). Plaintiffs contend that because "[t]he State provides for the automatic deduction of dues" from employees' paychecks but UDW can dictate the amounts of the dues, UDW and the State are "in a relationship of mutual overt encouragement." But this is misleading: automatic deductions of dues only occur *when union members authorize those deductions*. And employees opt to pay dues in exchange for the benefits of union membership. This does not meet the coercive power test, as detailed at length in State Defendants' Motion for Judgment on the Pleadings.

Nor is the "close coordination" between the State Controller and UDW on the deduction of union dues sufficient to meet the government nexus test, despite Plaintiffs' contention. As argued in State Defendants' opening brief, the deduction

6

of dues is ministerial; the State Controller does not determine which employees join UDW, nor are there any facts alleged showing that the State Controller—or any state law—dictates the terms of members' authorization agreements.  On the contrary, the terms of the dues authorization agreements and the enforcement of those agreements are based solely on the internal decisions of UDW—those determinations do not amount to state action under the government nexus test.  *See Bain,* 2016 WL 6804921 at *2.  Thus, Plaintiffs' challenge to section 12301.6(i)(2) and their allegations that the State Controller has violated their First Amendment rights fail.

## II.   PLAINTIFFS' MEDICAID ACT CLAIM FAILS AS A MATTER OF LAW

### A.   The Eleventh Amendment Bars Plaintiffs' Medicaid Act Claims Against the State

Also as noted in the State Defendants' opening brief, the Eleventh Amendment bars Plaintiffs' dues skimming claim under the Medicaid Act against the State.[3]  In their opposition, Plaintiffs argue that the application of the *Ex parte Young* exception applies to private individuals like themselves who are suing state officials for prospective relief.  Plaintiffs' Opp. at 16, quoting *Nat'l. Audubon Society, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (citation omitted).  But their argument fails for two reasons.  First, because Plaintiffs are no longer union members (and no longer having dues deducted from their paychecks), their requested relief against the State—for declaratory relief only (Compl. at p. 20)—is

---

[3] Plaintiffs argue that the State Controller violates Section 32 of the Medicaid Act by deducting dues payments from their paychecks.  Plaintiffs' Opposition to UDW's Motion for Judgment on the Pleadings (ECF No. 36) (Plaintiffs' Opp. to UDW) at 21.  As explained in State Defendants' Opening Brief, the federal Center for Medicare and Medicaid Services recently withdrew a regulation, 42 C.F.R. § 447.10(g)(4), that had confirmed its long-standing interpretation that Section 32 does not prohibit states from making payments to third parties on behalf of individual providers for health benefits, skills training, and "other benefits customary for employees," where the individual is a type of practitioner for whom Medicaid is the primary revenue source.  79 Fed. Reg. 2948, 2949 (Jan. 16, 2014).  Several states, including the State of California, are currently challenging CMS' rescission of that regulation; that case is pending in the Northern District.  *California et al. v. Azar et al.*, No. 19-cv-02552 (N.D. Cal. 2019).

1  retrospective, and therefore not available through an exception under *Ex parte*

2  *Young*.  *See Green v. Mansour*, 474 U.S. 64, 68-74 (1985) (noting that declaratory

3  relief is available under *Ex parte Young* only when there are ongoing or threatened

4  violations).

5      Second, *Ex parte Young* carves out a limited exception to a state's sovereign

6  immunity only when a plaintiff has a cause of action.  *See Mich. Corrections Org.*

7  *v. Mich. Dep't of Corrections*, 774 F.3d 895, 905 (6th Cir. 2014) ("*Ex parte Young*

8  provides a path around sovereign immunity if the plaintiff already has a cause of

9  action from somewhere else.")  As argued in State Defendants' and UDW's

10  opening briefs, Section 32 of the Medicaid Act does not provide a cause of action to

11  private litigants, nor contain the type of rights-creating language that gives rise to a

12  right enforceable via Section 1983.  *See Transitional Services of N.Y. for Long*

13  *Island, Inc. v. N.Y.S. Office of Mental Health*, 91 F. Supp. 3d 438, 445 (E.D.N.Y.

14  2015); see also State Defendants' Opening Brief (ECF No. 34) at 18-19.  Since

15  Plaintiffs have no cause of action, they cannot rely on *Ex parte Young* to waive the

16  State's sovereign immunity.

17      Plaintiffs also argue that even though they are no longer members of UDW

18  (and thus not in danger of suffering from future alleged violations of Section 32),

19  the Court retains jurisdiction over their class action suit because of the transitory

20  nature of their claims.  Plaintiffs' Opp. at 17, citing *Franks v. Bowman*

21  *Transportation Co.*, 424 U.S. 747, 755-57 (1976); *Sosna v. Iowa*, 419 U.S. 393,

22  399-401 (1975); *Gerstein v. Pugh*, 420 U.S. 103, 111 n. 11 (1975).  But the cases

23  that Plaintiffs cite to are distinguishable:  *Franks* involved named plaintiffs that had

24  already been granted relief by the court, 424 U.S. at 755-57; *Sosna* involved a one-

25  year voting residency requirement, which the named plaintiff met, 419 U.S. at 396;

26  and *Gerstein* involved the pretrial detention of individuals, 419 U.S. at 110 n. 11.

27  And nevertheless, even if Plaintiffs' class claims were to survive a mootness

28

argument, the *Ex parte Young* exception does not apply to their claims, as noted above.

### B. Plaintiffs Do Not Have a Private Right of Action to Enforce Section 32 of the Medicaid Act

As previously noted, contrary to Plaintiffs' contention, the Medicaid Act's direct payment provision does not create independent rights that are enforceable under section 1983. Plaintiffs' Opp. at 17.[4] Plaintiffs draw an analogy to a Ninth Circuit case where the Court found a private cause of action to enforce a sister provision of the statute, 42 U.S.C. § 1936a(a)(23). Plaintiffs' Opp. to UDW at 22-23, *citing Planned Parenthood Arizona, Inc. v. Betlach*, 727 F.3d 960 (9th Cir. 2013). Plaintiffs' argument erroneously relies on the holding in *Betlach* to support their argument that Section 32's language indicates Congress's intent to benefit private plaintiffs. *Betlach*, 727 F.3d at 966-69. But the statutory language considered in *Betlach*, and that court's reasoning, are inapposite to the language in Section 32.

In *Betlach*, the Ninth Circuit noted that section 1936a(a)(23)—which references "patients" (or similar terms) four times—"unambiguously confers such a right [of enforcement] upon Medicaid-eligible patients, mandating that all state Medicaid plans provide that 'any individual eligible for mandatory assistance . . . may obtain such assistance . . .'" *Betlach*, 727 F.3d at 966, citing 42 U.S.C. § 1936a(a)(23). Section 32, on the other hand, provides only prohibitory language on where payment for medical services should be directed; it does not detail how providers may personally enforce that right. 42 U.S.C. § 1396a(a)(32). Section 32 does not articulate rights-creating language for Medicaid *providers* in the same way that section 1936a(a)(23), as explained in *Betlach*, affirms the rights of Medicaid-eligible *patients*. This is in keeping with the Medicaid Act's purpose—it was

---

[4] Plaintiffs incorporate the arguments from their Opposition to UDW's Motion. State Defendants address those arguments here.

enacted to provide healthcare to low-income individuals, not to provide benefits to medical providers.

For this reason, the contention that the language of Section 32 confers privately enforceable rights has been rejected by multiple district courts. *See Aliser v. SEIU California*, No. 19-cv-00426-VC, 2019 WL 6711470 at *9-10, (N.D. Cal. Dec. 10, 2019) (finding that Section 32 does not give service providers a federal right to sue under the Medicaid Act, because the Act instead authorizes the Secretary of Health and Human Services to determine whether states are complying with section 1396a and to withhold Medicaid funding from those states accordingly); *Transitional Servs.*, 91 F. Supp. 3d at 444 ("Thus, [Section 32] does not require the state to issue any payment at all; instead, the provision places restrictions on who can receive such a payment.").

Plaintiffs cite *AHS Tulsa Regional Medical Center v. Fogarty*, No. 07-CV-338, 2007 WL 3046441 at *2 (N.D. Okla. Oct. 16, 2007), as support for their contention that Section 32's language indicates Congress' intent that the section confer a privately enforceable right. Plaintiffs' Opp. to UDW at 23-24. But *AHS Tulsa*, an unpublished opinion, is unpersuasive for the reasons expressed in *Transitional Services*: namely, that the logic in *AHS Tulsa* "depended upon the erroneous premise that § 1396a(a)(32) confers 'a right to receive payment,'" without providing any explanation for how it reached this assumption. *Transitional Servs.*, 91 F. Supp. 3d at 445. The court further noted that "§ 1396a(a)(32) is clearly a prohibition on factoring. It does not follow that this prohibition also confers upon providers the broader right to receive payment." *Id.* Thus, *AHS Tulsa* does not help Plaintiffs' argument.

Because Plaintiffs lack standing, because their claim is barred by the Eleventh Amendment, and because Section 32 does not independently create a private right of action, their Medicaid Act claim must be dismissed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, and for the reasons stated in the preceding brief, Defendants State Controller and Attorney General respectfully request that the Court grant their Motion for Judgment on the Pleadings.

Dated:  January 31, 2020                    Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


*s/Lara Haddad* _____
LARA HADDAD
Deputy Attorney General
*Attorneys for Defendants Attorney*
*General of California and California*
*State Controller*

State Defendants' Reply ISO Motion for Judgment on the Pleadings (19-cv-1287-CAB-KSC)

# CERTIFICATE OF SERVICE

Case Name:   **Quirarte, Alicia et al. v. United**      Case No.      **19-cv-1287-CAB-KSC**
             **Domestic Workers AFSCME**
             **Local 3930, et al.**

I hereby certify that on <u>January 31, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY OF DEFENDANTS CALIFORNIA STATE CONTROLLER AND ATTORNEY GENERAL IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>January 31, 2020</u>, at Los Angeles, California.

|  |  |
|---|---|
| Beth L. Gratz | *s/ Beth L. Gratz* |
| Declarant | Signature |

54087239.docx