UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA QUIRARTE et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED DOMESTIC WORKERS AFSCME LOCAL 3930 et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 19-CV-1287-CAB-KSC<br><br>**ORDER GRANTING MOTIONS FOR JUDGMENT ON THE PLEADINGS**<br><br>[Doc. Nos. 30, 34] |

This matter comes before the Court on the Defendants' motions for judgment on the pleadings. [Doc. Nos. 30, 34.] The motions have been fully briefed and the Court finds them suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, the motions are granted.

### I.　　BACKGROUND[1]

Plaintiffs Alicia Quirarte, Nora Maya, Anh Le, Viet Le, and Jose Diaz are In-Home Supportive Service ("IHSS") providers that provide non-medical assistance services to disabled individuals who qualify for California Medicaid ("Medi-Cal"). [Doc. No. 1 at ¶¶

---

[1] The Court is not making any findings of fact, but rather summarizing the relevant allegations of Plaintiff's complaint.

1

1, 17.²] Plaintiffs filed this putative class action complaint against Defendants Unified Domestic Workers AFSCME Local 3930 (the "Union") and California State Controller Betty Yee (the "State Controller") on July 11, 2019, alleging: (1) a violation of their First Amendment rights pursuant to 42 U.S.C. § 1983 for deducting union dues from Plaintiffs' wages; and (2) a violation of 42 U.S.C. § 1396a(a)(32) ("Section 32") pursuant to 42 U.S.C. § 1983 for deducting union dues from Medicaid payments made to IHSS providers. [*Id*. at 15–19.] On October 10, 2019, pursuant to stipulation between the parties, the Court granted the request of Xavier Becerra, in his official capacity as Attorney General of California, to intervene in this matter as a defendant. [Doc. No. 21.]

Plaintiffs are IHSS providers in various California counties. [Doc. No. 1 at ¶¶ 10–14.] Pursuant to California Welfare and Institutions Code section 12301.6, the Union was designated as the exclusive bargaining representative of certain IHSS providers in twenty-one California counties, including the counties where the named Plaintiffs are employed. [*Id*. at ¶ 22.] The State Controller deducts union dues from IHSS payments made to IHSS providers who agree to the terms of a dues deduction assignment with the Union. [*Id*. at ¶ 25.] Plaintiffs allege that the dues deduction assignments usually contain terms that make the deduction of union dues not contingent on maintaining union membership and make the deduction irrevocable except when notice of revocation is provided during a short, annual escape period. [*Id*. at ¶ 26.] Plaintiffs further allege that the dues deduction assignments do not contain language informing IHSS providers of their First Amendment right not to subsidize the Union and its speech or stating that the provider waives that right by executing the assignment. [*Id*. at ¶ 27.] While IHSS providers who are Union members can resign at any time, deduction of union dues will continue if notice is provided outside of the designated escape period. [*Id*. at ¶ 28.] Each of the Plaintiffs allege they were pressured or induced into signing the assignment. [*Id*. at ¶¶ 30, 35, 41, 45.]

---

² Document numbers and page references are to those assigned by CM/ECF for the docket entry.

On December 13, 2019, the Union moved for a judgment on the pleadings and on December 27, 2019, Defendants Xavier Becerra and Betty Yee (the "State Defendants") moved for the same. [Doc. Nos. 30, 34.]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings at any time after the pleadings are closed but within such time as not to delay the trial. FED. R. CIV. P. 12(c). A motion for judgment on the pleadings must be evaluated under the same standard applicable to motions to dismiss brought under Rule 12(b)(6). *See Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997). Thus, the standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) applies to a motion for judgment on the pleadings. *Lowden v. T–Mobile USA, Inc.*, 378 Fed. Appx. 693, 694 (9th Cir. 2010) ("To survive a Federal Rule of Civil Procedure 12(c) motion, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 544)). When deciding a motion for judgment on the pleadings, the Court assumes the allegations in the complaint are true and construes them in the light most favorable to the plaintiff. *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994). A judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

## III. DISCUSSION

Plaintiffs allege two causes of action: (1) a § 1983 claim for violation of Plaintiffs' First Amendment rights for the deduction of union dues from Plaintiffs' wages and (2) a § 1983 claim for violation of 42 U.S.C. § 1396a(a)(32) for deducting union dues from Medicaid payments made to IHSS providers. The Union and State Defendants (collectively "Defendants") move for judgment on the pleadings on similar grounds.

### A. Mootness of Prospective Relief Claims

The Defendants contend that Plaintiffs' claims for prospective relief do not present

a live controversy and are therefore moot. [Doc. No. 30-1 at 15–17; Doc. No. 34-1 at 11.] According to the Defendants, Plaintiffs lack any cognizable interest in forward-looking relief because the deduction of union membership dues from each of the Plaintiffs' wages has been terminated and Plaintiffs cannot show that they are likely to suffer any similarly alleged injury in the future. Plaintiffs respond that the Ninth Circuit has already considered, and rejected, an identical mootness argument in *Fisk v. Inslee*, 759 F. App'x 632 (9th Cir. 2019). In *Fisk*, the Ninth Circuit held under similar facts that while "no class ha[d] been certified and [the union] and the State ha[d] stopped deducting dues," this did not result in the plaintiffs' non-damages claims becoming moot. 759 F. App'x at 633. Citing to *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975), the Ninth Circuit held that the plaintiffs' "non-damages claims are the sort of inherently transitory claims for which continued litigation is permissible." *Fisk*, 759 F. App'x at 633. Like *Fisk*, this case involves a putative class action where prospective class members presumably remain subject to the challenged conduct. Accordingly, Plaintiffs' claims for prospective relief are not moot.

### B. State Action

To prove a § 1983 violation, Plaintiffs must demonstrate that the Defendants: "(1) deprived them of a right secured by the Constitution, and (2) acted under color of state law." *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989); 42 U.S.C. § 1983. "The state-action element in § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quotations and citation omitted). "[C]onstitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (emphasis in original). However, "[u]nder § 1983, a claim may lie against a private party who 'is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.'" *DeGrassi v. City of Glendora*, 207 F.3d

636, 647 (9th Cir. 2000) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). "[A] bare allegation of such joint action will not overcome a motion to dismiss; the plaintiff must allege 'facts tending to show that [the private party] acted 'under color of state law or authority.'" *Id.* (quoting *Sykes v. State of Cal.*, 497 F.2d 197, 202 (9th Cir. 1974)); *see also Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008). Courts use a two-prong framework to analyze "when governmental involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which the plaintiff complains." *Ohno*, 723 F.3d at 994. First, the court considers "whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id*. Second, the court considers "whether the party charged with the deprivation could be described in all fairness as a state actor." *Id*.

## 1. Whether Plaintiffs' Alleged Harm Results from the Exercise of a Right or Privilege Created by the State or a Rule Imposed by the State

Plaintiffs allege the constitutional deprivation in this case results from the State Controller's systematic extraction of monies for union speech from state payments made to individuals pursuant to the statutory scheme created by California Welfare & Institutions Code § 12301.6(i)(2). [Doc. No. 35 at 12; Doc. No. 36 at 12.] The Court is not persuaded by Plaintiffs' attempt to frame the alleged harm as resulting from state action. The crux of Plaintiffs' alleged harm in this case results from the dues deduction assignments that Plaintiffs voluntarily signed with the Union.

"The fact that the State performs a ministerial function of collecting Plaintiffs' dues deductions does not mean that Plaintiffs' alleged harm is the result of state action." *Smith v. Teamsters Local 2010*, 2019 WL 6647935, at *5 (C.D. Cal. Dec. 3, 2019). "Automatic payroll deductions are the sort of ministerial act that do not convert the Union Defendants' membership dues and expenditures decisions into state action." *Bain v. California Teachers Ass'n*, 2016 WL 6804921, at *8 (C.D. Cal. May 2, 2016); *see also Caviness*, 590

5

19-CV-1287-CAB-KSC

F.3d at 817 ("[A]ction taken by private entities with the mere approval or acquiescence of the State is not state action") (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)); *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1015 (W.D. Wash. 2019), appeal docketed, No. 19-35137 (9th Cir. Feb. 20, 2019) ("The State Defendants' obligation to deduct fees in accordance with the authorization 'agreements does not transform decisions about membership requirements [that they pay dues for a year] into state action.'") (quoting *Bain*, 2016 WL 6804921, at *7). Under California law, "[e]mployee requests to cancel or change deductions for employee organizations shall be directed to the employee organization, rather than to the Controller." Cal. Gov't Code § 1153(h). In addition, "[t]he Controller shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed." *Id*.

The deduction of membership dues is a ministerial act by the State Controller who relies upon the information provided by the Union and the employer. The State Controller has no further involvement beyond processing the deduction pursuant to the membership agreements the Plaintiffs voluntarily agreed to. The agreements themselves state that the authorizations "are voluntary and not a condition of [Plaintiffs'] employment" and that the Plaintiffs "hereby authorize the Office of the State Controller of California . . . to deduct from [Plaintiffs'] payments and to remit to the Union those dues and fees that may now or hereafter be established by the Union." [Doc. No. 30-3 at 2.] Plaintiffs' attempt to frame this as state action would result in any voluntary agreed upon deduction of wages by the State as state action (i.e. insurance premiums or retirement plan contributions). The "statutory scheme" if anything, merely authorizes Controller Yee to legally perform this ministerial function. Plaintiffs' citation to wage garnishment cases is inapposite. Those cases involve court or statutory mandated procedures to garnish wages without any prior notice or approval whereas here the Plaintiffs voluntarily entered into membership agreements with the Union and authorized the dues deductions. Accordingly, the Court is not convinced that this case presents a state action. However, for purposes of this opinion, even if the Court were to assume that Plaintiffs can satisfy the first prong, the Court finds

that Plaintiffs cannot satisfy the second prong that the Union is a state actor.

## 2. Whether the Union is a State Actor

"The state actor requirement ensures that not all private parties face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Collins*, 878 F.2d at 1151. "The Supreme Court has articulated four tests for determining whether a [non-governmental person's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Ohno*, 723 F.3d at 995 (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)). The Court addresses each test below.

### a. Public Function

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011) (quotations and citation omitted). "To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental." *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)). "'[V]ery few' functions fall into that category." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1929 (2019) (citation omitted) (collecting cases rejecting "public function" challenges to private conduct).

Plaintiffs contend that the Union is performing a public function because the State has outsourced to the Union its constitutional responsibility under *Janus v. AFSCME, Council 31*, ––– U.S. –––, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018), to determine if providers consented to dues deductions. [Doc. No. 35 at 19.] The Court finds Plaintiffs' creative argument unavailing. Here, the Plaintiffs voluntarily signed off on the dues deductions in the membership agreements which verified their consent. There is no constitutional responsibility under *Janus* that needed to be "outsourced to the Union" in

7

this situation. As will be discussed further below, the Court does not find that Janus applies when employees have voluntarily agreed to become union members and authorized the dues deductions. The Court finds that Plaintiffs have failed to demonstrate that the Union has been endowed with any governmental authority or that the Union is engaging in any function that is traditionally and exclusively governmental under the public function test.

### b. Joint Action

"'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with the non-governmental party that it must be recognized as a joint participant in the challenged activity." *Ohno*, 723 F.3d at 996 (internal quotations and citations omitted).

Plaintiffs contend that the Union is a state actor under the joint action test because it acts jointly with the State to take dues from the Plaintiffs without their consent. [Doc. No. 35 at 17.] According to Plaintiffs, the State Controller coordinates with the Union to deduct union dues pursuant to a state-established system. Plaintiffs have failed to support these conclusory allegations with sufficient factual support. The State Controller plays a ministerial role in performing the deductions pursuant to the membership agreements. Beyond this role, the State Controller has no further involvement. Plaintiffs have failed to show that "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights" or that the deduction of membership dues amounts to "significant assistance" that warrants a finding of joint action. *Ohno*, 723 F.3d at 996.

### c. State Compulsion

Under the state compulsion test, "[a] state may be responsible for a private entity's actions if it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Caviness*, 590 F.3d at 816.

Plaintiffs contend that by allowing the Union to dictate the amount of the dues deductions, the State and Union are in a relationship of mutual overt encouragement. [Doc.

No. 35 at 21.] Even if the Union can dictate the amount, the Court is not convinced that the State Controller's deduction of membership dues, or allowing the Union to dictate the amount, on its own leads to a finding of significant encouragement, overt or covert, by the State. The state compulsion test has not been met.

### d. Governmental Nexus

"Under the governmental nexus test, a private party acts under color of state law if there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Ohno*, 723 F.3d at 996, n.13.

Again, Plaintiffs allege that the State and Union closely coordinate with one another with respect to the dues deductions such that the Union's actions can be fairly attributed to that of the State itself. [Doc. No. 35 at 22.] As previously stated, the Court is not convinced that the deduction of dues pursuant to the membership agreements lends to a finding of a sufficiently close nexus between the Union and the State and therefore the governmental nexus test has also not been met.

In conclusion, Plaintiffs have failed to satisfy any of the tests to find that the Union is a state actor and have failed to allege facts tending to show that the Union acted under color of state law or authority. Defendants' motions for judgment on the pleadings as to the First Amendment violation on the ground that Plaintiffs' alleged harms do not arise from any state action are therefore **GRANTED**.

### C. First Amendment Violation

Even if Plaintiffs had sufficiently alleged state action, Plaintiffs have ultimately failed to demonstrate that Defendants violated their First Amendment rights. Plaintiffs contend that *Janus* requires proof of a First Amendment waiver to establish consent to dues deductions. [Doc. No. 36 at 14.] Plaintiffs have not cited to, and the Court has been unable to find on its own, any case that has broadened the scope of *Janus* to apply Plaintiffs' waiver requirement argument when employees voluntarily agree to become members of the union and authorize the deduction of union dues. The Court agrees with the numerous

courts in this circuit that have held the opposite. The waiver requirement does not apply to the circumstances in this case compared to the situation in *Janus* involving the deduction of agency fees from a nonmember.

In *Janus*, the Supreme Court discussed the First Amendment right to not be "compel[ed] to mouth support for views [one] find[s] objectionable." *Janus*, 138 S. Ct. at 2463. Any payment to a union, either in the form of dues or agency fees, "provide[s] financial support for a union that 'takes many positions during collective bargaining that have powerful political and civic consequences.'" *See id*. at 2464 (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 310-311 (2012)). A union's extraction of fees from an employee who has *not agreed* to support such positions thus constitutes a "compelled subsidization of private speech." *Id*. (emphasis added). *Janus* therefore held that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages . . . unless the employee affirmatively consents to pay." 138 S. Ct. at 2486. When nonmembers agree to pay, they are "waiving their First Amendment rights." *Id*. The waiver "must be freely given and shown by 'clear and compelling' evidence." *Id*.

The *Janus* waiver requirement does not apply under the circumstances of this case. In *Janus*, the plaintiff never signed a union membership agreement that authorized a dues deduction assignment. *Janus* specifically concerned the "deduct[ions] from a nonmember's wages" without "affirmative[ ] consent[ ]." *Id*. at 2486. Notably, "the relationship between unions and their voluntary members was not at issue in *Janus*." *Cooley v. Cal. Statewide Law Enf't Ass'n*, 2019 WL 331170, at *2 (E.D. Cal. Jan. 25, 2019). When an employee agrees to union membership and authorizes a dues deduction assignment, an employee is consenting to financially support the union and its "many positions during collective bargaining," *see id*. at 2464, and therefore his speech is not compelled. Because dues deductions do not violate a voluntary member's First Amendment right not to be compelled to speak, the *Janus* waiver requirement does not apply to voluntary members. *See Belgau*, 359 F. Supp. 3d at 1016-17 (W.D. Wash. 2019) ("*Janus* does not apply here -- Janus was not a union member, unlike the Plaintiffs here,

10

19-CV-1287-CAB-KSC

and Janus did not agree to a dues deduction, unlike the Plaintiffs here.").

Plaintiffs in this case voluntarily agreed to union membership and deduction of union dues. "Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced. The employee is a union member voluntarily." *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 293 (4th Cir. 1991); *see also Anderson v. Serv. Emps. Int'l Union Local 503*, 400 F. Supp. 3d 1113, 1116-18 (D. Or. 2019) ("To the extent that Plaintiffs may argue they were 'coerced' into membership, the Court does not agree.").

Moreover, "[t]he fact that plaintiffs would not have opted to pay union membership fees if *Janus* had been the law at the time of their decision does not mean their decision was therefore coerced." *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019); *Smith v. Bieker*, No. 18-CV-05472-VC, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019) (finding a valid agreement, even if plaintiffs did not know they could choose not to pay dues at the time of signing, because "changes in intervening law – even constitutional law – do not invalidate a contract") (citing *Brady v. United States*, 397 U.S. 742, 757 (1970). As this case involves voluntary members, the Union has not violated Plaintiffs' First Amendment rights. Accordingly, Defendants do not need to show a *Janus* waiver to enforce the agreement.

Finally, "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991); *see also Fisk*, 759 F. App'x at 633 (holding that the First Amendment does not preclude the enforcement of plaintiffs' voluntary union membership contracts); *Belgau*, 359 F. Supp. 3d at 1009. Accordingly, the Plaintiffs have not shown a violation of their First Amendment rights and Defendants' motions for judgment on the pleadings on the First Amendment violation are **GRANTED**.

### D. Medicaid Act Violation

In addition to the First Amendment violation, Plaintiffs also claim that the State Controller's deduction of union dues from Plaintiffs and other IHSS providers violates Section 32 of the Medicaid Act. [Doc. No. 36 at 26.] Plaintiffs contend Section 32 gives Medicaid providers a right to direct payment for their services and prohibits diversions of those payments to any other party, except as expressly permitted. *Id.* The Court does not find that Section 32 creates a private right of action under § 1983. *See Aliser v. SEIU Cal.*, 2019 WL 6711470, at *1 (N.D. Cal. Dec. 10, 2019) ("[Section 32] of the Medicaid Act doesn't give the plaintiffs a federal right to sue under section 1983.").

42 U.S.C. § 1396a(a) lists requirements that a state must follow under its state Medicaid plan. The Secretary of Health and Human Services is authorized to determine whether states are complying with the requirements of section 1396a, and to withhold Medicaid funding from noncompliant states. § 1396c. Under Section 32, a state plan must "provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise." § 1396a(a)(32). Section 32 does not create an individually enforceable right. *See Transitional Services of New York for Long Island, Inc. v. New York State Office of Mental Health*, 91 F. Supp. 3d 438, 445 (E.D.N.Y. 2015). On its face, Section 32 restricts the entities to whom a payment can be made under the plan; it does not create an entitlement to payment. *See Gonzaga v. Doe*, 536 U.S. 273, 290 (2002) ("[I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms."). Unlike Section 23, the subject of *Planned Parenthood Arizona Inc. v. Betlach*, Section 32 does not contain language that "unambiguously confers . . . a right." *See Betlach*, 727 F.3d 960, 966 (9th Cir. 2013) ("'[A]ny individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required.'" (quoting § 1396a(a)(23)); cf. *Ball v. Rodgers*, 492 F.3d 1094, 1107 (9th Cir. 2007) ("[N]either

12

provision uses the word 'individuals' simply in passing. Instead, both are constructed in such a way as to stress that these 'individuals' have two explicitly identified rights.").

Courts have determined that the purpose of Section 32 was to prevent healthcare providers from assigning their entitlement to reimbursement to a third party:

> "Prior to 1972, it was possible for state departments of public aid to reimburse medical providers at any address designated by the provider on the bill for services rendered. Quite frequently, physicians had their payment vouchers sent directly to factoring companies which would pay the provider at a discounted amount of the face value of the bills in exchange for an assignment of the physician's interest in the bills. In this manner, the provider obtained immediate payment for services rendered, albeit at a discounted rate. However, this system of payment was believed to be responsible for inflated and sometimes fraudulent charges for services rendered."

*Michael Reese Physicians & Surgeons, S.C. v. Quern*, 606 F.2d 732, 734 (7th Cir. 1979), adopted en banc, 625 F.2d 764 (7th Cir. 1980), cert. denied, 449 U.S. 1079 (1981). In response to this problem, Congress amended § 1396a(a) to stop the "factoring" of Medicaid receivables. *See Danvers Pathology Associates, Inc. v. Atkins*, 757 F.2d 427, 428-31 (1st Cir. 1985) (Breyer, J.) (discussing the legislative history of § 1396a(a)(32)).

Section 32 does not compel payment to healthcare providers. Rather, it states that if a payment is made under the plan, then it must be made to the provider alone. Thus, Section 32 does not require the state to issue any payment at all; instead, it places restrictions on who can receive such a payment. In other words, there is no rights-conferring language in the provision. Absent such language, the Court concludes that Section 32 does not confer a federal right upon medical providers. Accordingly, Defendants' motions for judgment on the pleadings on the Medicaid Act violation are **GRANTED**.

IV. **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the Defendants' motions for judgment on the pleadings. Because no First Amendment violation can be shown, and no

13

private right of action exists under Section 32 of the Medicaid Act, no amendment will be able to cure the deficiencies of Plaintiffs' complaint. Accordingly, this case is **DISMISSED with prejudice** and the Clerk of Court shall **CLOSE** this matter.

It is **SO ORDERED**.

Dated: February 10, 2020

Hon. Cathy Ann Bencivengo
United States District Judge